SCHOPPS, Respondent, vs. SCHOPPS, Appellant.

*October 21—November 17, 1925.*

*Divorce: Desertion: What constitutes: Living apart: Consent: Good-faith request to resume marital relationship by one spouse: Unreasonable refusal by other: Appeal: Evidence: Sufficiency: Where proof is largely written: Reversal.*

1. To constitute desertion as a ground for divorce under the statute, the desertion must be not necessarily malicious, but wilful and intentional for the statutory period; and consent of the complaining party to the separation is fatal to a claim of desertion. p. 157.

2. Mere separation or living apart, even for an extended period, does not amount to desertion, in the absence of an intention not to resume the marital relation. p. 157.

3. A separation which is begun by mutual consent may become desertion when the complaining spouse in good faith offers to terminate the separation and the other party unreasonably refuses to do so.   p. 157.

4. In a previous action for a divorce one of the alleged grounds was desertion, and the court found that the separation was begun with the consent of plaintiff, and that defendant had not refused to live with him in any suitable home he might provide.   *Held,* that such findings were conclusive as to the facts so found; and a later action on the ground of desertion must be based on subsequent events, though the former acts and conduct of the parties may have a relation to the issue involved.   p. 157.

5. The separation having been by mutual consent, the burden rested upon plaintiff to show that his request for defendant's return was made in good faith, and, to warrant judgment for plaintiff, the testimony should show that the refusal of the defendant to return as requested was unreasonable; and in this case the evidence is *held* not to sustain findings that the husband had made his request for the return of the defendant in good faith, or that under all the circumstances her refusal to return was unreasonable.   p. 159.

6. This court is not bound to affirm findings of the trial court where the proof consists largely of writings which it is the duty of this court to construe.   p. 159.

APPEAL from a judgment of the circuit court for Milwaukee county: OSCAR M. FRITZ, Circuit Judge.   *Reversed.*

This is an appeal from a judgment granting the plaintiff's prayer for divorce upon the ground of desertion.   The parties were married on June 24, 1917, and lived together in a flat in Milwaukee for about six weeks.   The furniture in the flat was unpaid for, and when the plaintiff changed his employment as a bookkeeper at $75 a month for that of a substitute letter carrier at $40 a month he was unable to maintain the flat and the parties moved to the home of the plaintiff's parents.   After about two weeks the defendant returned to live with her parents because she was unable to get along with her mother-in-law with respect to the housework.   She testified, however, that she lived with her own

parents with the consent of the plaintiff and that he knew that she was willing to return to him when he could provide a home for her.

On November 6, 1917, the plaintiff commenced his first action for divorce, but the complaint was withdrawn upon a motion to dismiss in June, 1919. On July 5, 1919, a second action for divorce was begun, and in December, 1921, judgment was rendered dismissing the plaintiff's complaint. In April, 1922, the plaintiff wrote the defendant asking her to return to him as he had prepared a home for her. The defendant asked for details as to the home which the plaintiff alleged that he had ready for her, and several letters were exchanged in which the plaintiff's ability to maintain a home was discussed. The following are the letters:

"Milwaukee, Wis., April 23, 1922.

*"Dear Margaret:* Have you ever given thought to the idea of re-establishing our home? I have prepared a home and would be very glad to have you come back. There is no reason why we should live separate and apart. Whatever has been done in the past should be forgotten.

"I wish that you would give this matter your very serious consideration and let me know as soon as possible what you intend to do.

"I am very anxious about this matter and I hope that you will conclude to follow my suggestion.

"Your loving husband,

"CHARLES SCHOPPS,

"1131 South Pierce St., Milwaukee."

"Milwaukee, Wis., May 4, 1922.

*"Dear Charles:* I received your letter of the 23d, sent by 'Registered mail.' Your letter came unexpectedly and was a complete surprise, inasmuch as you have not written to me since 1917. In your letter you say: 'I have prepared a home and would be very glad to have you come back.' I would like you to be a little more explicit regarding this statement and wish you would explain just what you mean.

I sincerely trust you have prepared a home different from that which we had on 36th and Lisbon avenue, where we had the furniture, rugs, stove, etc., and you had no money to pay for same after telling me repeatedly you had the money in the bank. I shall certainly give your offer every consideration if you prove to me that you are truly able to furnish a home for us with furniture and everything paid for, but without an explanation from you I do not see how you can furnish a home now, since you could not before you were drafted for the army, which was in the spring of 1918, and have not worked since that time, as you yourself testified in court last spring.

"In your letter you also state: 'There is no reason why we should live separate and apart. Whatever has been done in the past should be forgotten.' To this I can only ask: 'Don't you think an apology is due me for the cruel treatment accorded me and for the untruths you said about me in the various court proceedings even while you were under oath?'

"*Charles,* if you are indeed sorry for your neglect, indifference, and cruel treatment of the past towards your wife and truly wish to establish a home and prove you are sincere and are able to upkeep same as the man of a household should, and promise not to deceive me regarding same as you did when you took me as a bride, I will greatly appreciate hearing from you again in more detail.

"Your wife,          MARGARET."

"Milwaukee, Wis., May 13, 1922.

"*Dear Margaret:* I received your letter and was indeed glad to know that you are seriously considering living together again. You want me to be more explicit about establishing our home. I do not see how I can be any more explicit than I was in my last letter, except to state that as soon as you show an inclination to be sincere in this matter you may rest assured that I will keep my word.

"I am certainly trying to do the right thing, and can assure you that if you come half way there will be no difficulty about forgetting the past.

"With reference to the apology that you speak of, I think that there is no cause for it whatever. My idea is to forget

the past as far as both of us are concerned and to start all over again.

"Will you kindly advise me just what you intend to do so that I can act accordingly?

"Your loving husband,            CHARLES."
"Charles S. Schopps,
        "1131 South Pierce St.,
                "Milwaukee, Wis."

                "Milwaukee, Wis., May 23, 1922.
*"Dear Charles:* I received your letter of the 13th, but was very much disappointed because you did not answer any of the questions I asked in my letter of the 4th.

*"Charles,* why do you evade my questions? Is it because you cannot answer them truthfully? In your first letter to me of April 23d you say you have furnished a home. It is regarding this home which you say you have furnished that I would like full information about: Where is it? Are you able to maintain same? Are you now able to support a wife, or are you still entirely dependent upon the government for support?

"Awaiting your reply, I am
                "Your wife,            MARGARET."

                "Milwaukee, Wis., June 2, 1922.
*"Dear Margaret:* I received your letter of the 23d of May and wish to state that it is about time that you would state definitely whether you desire to return to me and establish a home or not. As I stated in my former letters, I am perfectly willing to support you and furnish you a home, but I am just about sick and tired of the evasive correspondence which you are carrying on with me.

"This is positively the last letter I will write, and if you desire to follow my suggestion and forget the past, why it is up to you.        Your loving husband,
                "CHARLES SCHOPPS,
                "1131 South Pierce St., Milwaukee."

                "Milwaukee, Wis., June 14, 1922.
*"Dear Charles:* I received your letter of the 2d and am sorry to say that I do not understand it at all. You do not

answer any of my questions in regard to full particulars as to the home you have furnished, nor do you answer how you are able to upkeep this home.    All you say is: 'I am perfectly *willing* to support you and furnish you a home, but am just about sick and tired of the evasive correspondence which you are carrying on with me.'    In regard to the first part of your above remark, this may be true and you may be perfectly *willing* to support me; but *Charles*, does it also mean that you are *able* to support me as well as being *willing*.

"In regard to the latter part of your statement, don't you think it is you who are the evasive correspondent?    I think if you are really sincere in your proposition, you will give me the full details requested, and answer the questions set forth in my two previous letters to you.

"Awaiting these answers, thereby avoiding all unnecessary correspondence, I am

"Your wife,    MARGARET."

After this interchange of letters there was no communication between the parties until the papers were served upon the defendant in this action in the month of September, 1923, in which she was charged with deserting the plaintiff in January, 1922.    The defendant is earning $85 a month as a stenographer at the Allis-Chalmers Manufacturing Company in Milwaukee, and receives from the government $27 a month as the wife of the plaintiff, who was discharged from the army as totally disabled.    The plaintiff has had no income since his discharge from the army except the $63 a month paid to him by the government, and he lives with his parents, doing a little work in a jewelry establishment in which his father has an interest, by way of part payment for his board and room.    If divorced, the plaintiff would receive $80 a month as a single man and the defendant would receive nothing.    Further facts will be stated in the opinion.

*Vincent D. Hennessey* of Milwaukee, for the appellant.

For the respondent there was a brief by *Swietlik & Burns* of Milwaukee, and oral argument by *F. X. Swietlik*.

JONES, J.   There are certain general rules applicable to
the facts of this case which are so well settled as to require
no enumeration of the large number of cases which might
be cited.   In order to constitute desertion under our statute
and many similar statutes, the desertion must be not neces-
sarily malicious, but wilful and intentional and for the
statutory period.   The consent of the complaining party is
fatal.   Desertion implies a want of consent, an unwilling-
ness on the part of the complaining spouse.   It follows that
so long as husband and wife agree to live apart there is no
desertion.   Mere separation or living apart even for an ex-
tended period does not amount to desertion.   There must
be in addition the intent not to return or resume the marital
relation.   Although the living apart begins with mutual
consent, there may nevertheless be desertion; and it begins
when the spouse complaining in good faith makes offers to
terminate the separation and the other party unreasonably
refuses and shows the intention of continuing the separation.

In the first of the former actions brought by the plaintiff
the ground alleged was cruel and inhuman treatment.   In
the second action the grounds alleged were cruel and inhu-
man treatment and desertion.   In the second action the court
found in substance, among other things, that the separation
of the parties was with the consent and approval of the
plaintiff; that the defendant had not refused to live with
the plaintiff in any suitable and reasonable home he might
provide; that there had been no desertion; and that the al-
legations of the complaint as to cruel and inhuman treatment
were unproven and untrue.   These findings and the judg-
ment thereon are of course conclusive as to the facts so
found and adjudicated.   If there was any desertion it must
be based on subsequent events, although the former acts
and conduct of the parties may have some relevancy on the
issues now involved.

It is claimed by counsel for the plaintiff, and it was found
by the court, that the desertion began on or about April

21, 1922, which was about the date of plaintiff's first letter suggesting the defendant's return. Since the separation was in the beginning by mutual consent, it is obvious that the two main questions are, first, Was the plaintiff's request for a resumption of the marital relation made in good faith? and second, Was the defendant's conduct, in not complying with the request, unreasonable? There is testimony by the plaintiff that several years before the commencement of the present suit he with his attorney had gone to the house of the defendant to seek a reconciliation and ask her return, and in her absence had been rudely repulsed by her father. The plaintiff testified in his evidence on the trial of the second action for divorce that since his return from the army he had never requested or wanted his wife to return; he had written no letters until the letter of April 23, 1922. Before this letter was written he had studied law and was familiar with the law relating to desertion. We shall attempt no lengthy discussion of the correspondence between the parties. The plaintiff's first letter was in the proper spirit. The second evaded giving any of the information which the defendant desired, and the last letter was in such a tone as to give little promise of any real reconciliation. In none of them was there any suggestion of any conference at which explanation could be made or the desired information could be furnished. The letters of the defendant are open to some criticism. Taken by themselves and read apart from any background or the previous history of their married life, they would seem too exacting and to show an unwillingness to bear her part of the burdens of married life. If she had believed that the offer to live again as husband and wife was made in good faith, she would not be justified in refusing the offer merely because she feared that she would not be as comfortable as at the home of her parents. But there were circumstances which justified the fear that there would be no reasonable provision for her support. During the six weeks when they lived to-

gether it became necessary, for want of means, to live a portion of the time unhappily with the plaintiff's parents. Furniture which had been bought could not be paid for and was taken back by the dealers. The plaintiff had brought repeated actions for divorce without cause, and had manifested for a long period of time no interest in the defendant's welfare. The plaintiff stated in his first letter that he had "prepared a home," but the oral testimony showed that his statement was not true. His only preparation, according to his own testimony, was that he had the assurance of his parents that they would help him as to furniture.

In this action for desertion, where the separation was by mutual consent, the burden rested on the plaintiff to show that his request for the defendant's return was made in good faith, and to warrant judgment for the plaintiff the testimony should show that the defendant's refusal was unreasonable. *Gleason v. Gleason,* 4 Wis. 64; 9 Ruling Case Law, 365; 19 Corp. Jur. 60. It is the view of this court that under all of the circumstances the refusal was not unreasonable. It is also the conclusion of the court that the plaintiff failed to prove that his request for the return of the defendant was made in good faith. We do not feel bound to affirm the findings of the trial court for the reason that the proof consisted very largely of writings which it is our duty to construe.

*By the Court.*—The judgment is reversed, and the cause remanded with directions to dismiss the complaint.