WILL OF MECHLER: MECHLER, Appellant, vs. LUETTGERODT, Executor, and others, Respondents.

*October 10—November 14, 1944.*

For the appellants there was a brief by *Rogers & Owens* of Portage, and oral argument by *Harlan B. Rogers*.

For the respondents there was a brief by *Henry V. Kane* of Milwaukee, attorney, and *Spohn, Ross, Stevens & Lamb* of Madison of counsel, and oral argument by *Mr. Myron Stevens* and *Mr. Kane*.

*Richard R. Rynders* of Madison, for the executor, appellant in part and respondent in part.

Rosenberry, C. J.    Blanche C. Mechler, the testatrix, died on May 9, 1943, at her son's residence in California; at which time she was a legal resident of Wisconsin Dells. Ambrose Francis Mechler was her only surviving child and heir.    He had been a resident of California for two years. The testatrix's husband died intestate in 1928, leaving real property inventoried at $11,600 and personal property valued at $14,821.12.    His widow, the testatrix, acted as administratrix of his estate and as guardian of the son Ambrose.    In 1929, when the son was fifteen years old, she filed a receipt for $6,531.75 as guardian.    She served as guardian until he became of age in 1934.    Ambrose has been twice married.    He was divorced from his first wife three years ago and married his present wife two years ago.    He has no children.

The inventory filed in the estate of Blanche C. Mechler listed real estate in Wisconsin at $2,233.33 and personal property valued at $32,743.85. Notice to creditors was given. No claims have been filed and the time for filing claims had expired at the time of the hearing.

It appears that after Ambrose arrived at the age of twenty-one, the deceased and he entered into an arrangement by which the property which came from the father should be held by the mother and the son in joint tenancy. Thereafter she made her will, dated August 30, 1934. The first part of the will, as to which there is no dispute, provides principally for her burial, marking of her grave, for the saying of Masses for herself and her deceased husband, and certain small gifts to religious institutions.

After making these dispositions, the will provides:

"To my son Ambrose Francis Mechler, I bequest all my personal property, he is to have all our Savings Accounts in all the Banks I and he have an account with as well as all our Building and Loan Certificates and Pass Books we have jointly with rights of Suriver. All The other Investments I have, that is the Principal is to be held in Trust for him, until he is 35 years of age, but he is to get the In Come of these Investments until he is 35 years old. After he is 35 years old, all the Principal is to be turned over to him to have full controle of there after. Under my late husbands Probate of his Estate they have Assigned to him the Store Building 206 Broadway Wisc. Dells, Wis. (Lot 7 Block 67). also the Dwelling (Lot 4 & 5 Block 50) 809 Capital St. Wisconsin Dells, Wis. As well as the Joseph and Mary Wright mortgage, The J. J. Barrett home, on Corner of Wisc. & Captial St. Wisc. Dells, Wis. the West (60) Sixty ft. of Lot (9 & 10) block thirty-seven (37) all belong to him already, from his fathers estate (F. J. Mechler)—For Administrator or Executor, I appoint Mr. A. W. Leuttgrodt of Wisc Dells, Wis, he is to appoint a reliable trust Co. to hold the Principal in Trust until my Son is 35 years of age. (If at my death my son is already 35 years old, he is to be Executor of the Estate himself.)

"If any Mortgages or Bonds or Investments are paid off, or Mature, It is to be reinvested in other first class Bonds or securities or U. S. Goverment Bonds.

"I also wish my Son after he gets married, to make a Will to this effect. In Case of his death, If his widow remarries again, she is to receive no more in come or allowance from this estate, then if he has children then this estate is to be held in trust for his children, until they are of age.

"In case of my Sons death he is to have the same burrial and all the same Masses to be read for the repose of his soul as for my self, he then is to be burried beside his parents, and get the same Grave marker.

"If he leaves a widow, his widow is to get an Allowance out of this estate of One hundred dollars per month, as long as she remains his widow, and does not remarry. If she marries she looses her Allowance, then all stays in trust for his children until they are of age. If at my Son's death he has no wife, or children, then after all expenses are paid. The poor Students studing for the priesthood at St. Francis Seminary, St. Francis Wis. are to share with the Orphance in this estate, after all the rest of the bequest are paid. ~~If my brother-in-law Ed F. Mechler of Marshfield Wis. is still alive, and my Sister-in-law Anne Knippel of Wausau Wis. also is still alive then they are included in this will, then they with all the others mentioned before but not their families, Nephew Herman J. Knippel of Wis. Dells Wis.,~~ and my Adopted Sister Mrs. Emma M. Bonesho if alive of Amery Wis, R.R. #1 is ~~all are~~ to share equal shares. ~~(And my Niece Mary Louisa Klemme is then to get also all my personal property).~~ As well as the others mentioned.

"Signed by MRS. BLANCHE C. MECHLER.
"Witnesses: EDNA FRANCIS
A. W. BENNETT
"Dated Wisconsin Dells, Wis.
August 30th 1934."

Ambrose claimed upon the hearing that under the terms of the will it should be construed as follows: .

A. To vest title to the residue of her estate in her son and only heir at law, Ambrose F. Mechler, at the date of her death;

B. That he is entitled to the immediate enjoyment of the cash in the banks, the building and loan stock, and the fund represented by the passbooks;

C. That the remainder of the personal property, although the title is vested in Ambrose F. Mechler, is to be held in trust for him until he attains the age of thirty-five, the income being paid to him annually and the principal upon his reaching that age;

D. That no precatory trust was created by the request to Ambrose F. Mechler to make a will or the provisions of the will thereafter;

E. That the cancellation of the paragraphs in the will revoked those clauses; and

F. That testatrix died intestate as to the real estate owned by her.

The executor contended that the will should be construed:

a. That when she used the term "personal property" she referred to items other than stock, bonds and other items classified as investments.

b. That a trust was created and the trustee holds title and performs duties until the son, Ambrose F. Mechler, reaches thirty-five years of age.

c. That the gift to the son is contingent upon his attaining the age of thirty-five years.

d. That if the son dies before attaining thirty-five years of age the corpus of the trust estate goes to others.

e. That when the son becomes thirty-five years of age the trust terminates, but in the event the son does not attain that age, the trustee continues to complete the trust and pays to the other beneficiaries as the future may determine those contingencies.

On behalf of those entitled to the charitable bequests it was contended:

(a) That a valid trust was created of the residue of testator's estate during the lifetime of Ambrose, and

(b) That a valid trust was created disposing of such residue upon the death of Ambrose including payment to those

entitled to charitable bequests of a proportionate share of such residue if Ambrose dies without issue.

Counsel for those entitled to the charitable bequests further contend that the Wisconsin real estate does not pass as intestate property but goes to Ambrose under the terms of the will.

The trial court in a carefully prepared and helpful opinion held:

"1. The bequest covering 'personal property' refers to personal effects, and is exclusive of notes, bonds, cash, etc.

"2. All the real estate over which this court has jurisdiction descends as intestate property, in this case, to the son.

"3. The portions of the will through which lines have been drawn represent canceled portions of the will.

"4. The residue of the property was given to the son in trust, the same to be handled by a trust company until the son attains the age of 35 years, after which he shall have full control thereof. The net income shall be paid to the son so long as he lives. At his death the trust estate shall be chargeable with the son's burial expenses and Masses as provided for in the will, and his widow, if any he leaves, shall receive a monthly allowance of $100 so long as she lives and remains his widow. The balance of the trust fund not required for the son's widow shall be paid to the son's child or children, if any are living at his death, said payment to be made when they become of age, each to have his share as he becomes of age.

"If the son dies without leaving wife or children, the trust fund, after paying the son's funeral expenses and Masses, shall be paid over to the charities and the adopted sister in equal amounts. If the son dies without children, but leaving a widow, then the payment of the trust fund shall be deferred until the widow no longer qualifies to receive the $100 monthly income referred to."

The first question for consideration is what the testatrix meant by "personal property." From the language employed by the testatrix, considering the circumstances presented at the time, it is our conclusion that by the term "personal prop-

erty" the testatrix intended to include not only her personal effects as held by the trial court but her interest in such personal property as came to her from the estate of her husband. This conclusion is supported by the arrangement which was made between the mother and the son as to the joint ownership of this property as well as from the succeeding sentence contained in the will. This sentence begins: "All The other Investments I have," etc. By this the testatrix evidently meant investments which belonged to her separate estate. Such investments were to be held in trust until Ambrose arrives at the age of thirty-five years. It was apparently her own mortgages, bonds, and investments as distinguished from those which she received from the estate of her husband that were referred to in the subsequent clause relating to reinvestment. In any event, any property held by her in joint tenancy with her son would pass by right of survivorship and not under the will. *Estate of Staver* (1935), 218 Wis. 114, 260 N. W. 655.

It is quite evident that the testatrix divided her investments into two classes, those which she had received from the estate of her husband and those which belonged to her separate estate. Those which came from her husband were to go to her son absolutely, those which constituted her separate estate were to be held in trust for him until he reached the age of thirty-five years.

All parties agree that by the language of the will the testatrix intended to create a trust to continue until Ambrose reaches the age of thirty-five years. The parties are divided in opinion as to whether the trust continues for the benefit of the wife and children of Ambrose and under certain circumstances for the benefit of the named charitable beneficiaries or whether it terminates when Ambrose becomes thirty-five years of age. The will provides:

"After he is 35 years old, all the Principal is to be turned over to him to have full controle of there after."

The question is, Do these words vest in Ambrose an interest in the estate of his mother which is to be turned over to him completely at the expiration of the prescribed period, or by subsequent provisions of the will is a trust created, Ambrose to have the income during his lifetime and upon his death, the principal to be disposed of in accordance with the terms of the will? In other words, after Ambrose reaches the age of thirty-five does he hold the estate of his mother in full ownership or as trustee for the beneficiaries named in the will? The trial court held, as already stated, that after he reached the age of thirty-five, he held the estate of his mother in trust, not as owner.

To what extent is this finding of the trial court binding upon this court is the first question that arises in the solution of this problem.

Counsel for the charitable beneficiaries argue that the determination of the trial court cannot be set aside on appeal unless this court finds that the determination of the trial court is clearly wrong and against the great weight and clear preponderance of the evidence. In support of this proposition the case of *Will of Keith* (1933), 213 Wis. 167, 250 N. W. 382, is cited. This case does not sustain the proposition made by counsel. In the *Keith Case* the question was whether the will was signed by the deceased in the presence of the witnesses and attested and subscribed by the witnesses in the presence of the testator. That contention involved a disputed question of fact and under the well-established rule the finding of the trial court could not be set aside unless the finding was against the great weight and clear preponderance of the evidence. In this case there is no disputed question of fact.

However, the case of *Will of Mitchell* (1914), 157 Wis. 327, 330, 147 N. W. 332, not cited, does sustain the position of counsel. The question in the *Mitchell Case* was whether the word "child" included a child by adoption. The trial court

held that as a matter of law it did not. On appeal this court said:

"The trial court in determining the precise meaning intended by a testator in using a particular expression deals with matter of fact to be solved from evidentiary inferences and, in case of a result being reached consistent with correct principles of law, the rule applies on appeal that such result will not be disturbed unless clearly wrong."

In the *Mitchell Case, supra,* as in this case, there were no disputed facts. In the *Mitchell Case* the facts were stipulated. The county court said with respect to the clause of the will in question:

"The court finds and decides as a matter of law that the said William Henry Mitchell did not have any children at the time of his death. That the adopted child Clarence Mitchell is not entitled to any interest in the real estate above described by virtue of the terms of said will."

The circuit court in its disposition of the case, followed the determination of the county court. It is difficult to reconcile the decision of this court in the *Mitchell Case, supra,* with other well-established rules of law. The rule is stated thus in 9 Wigmore, Evidence (3d ed.), p. 522, sec. 2556:

"The construction of all written instruments belongs to the court. It may become necessary to hear evidence of the surrounding circumstances that fill out the meaning of the words, as well as of any local or commercial meanings attached to particular words by usage; and the ascertainment of this is for the jury. But, subject to the amplification or the precision of the meaning thus ascertained, it is the duty of the jury to take the construction of the instrument from the court." Citing *Rohan Motor Co. v. Industrial Comm.* (1925) 188 Wis. 223, 205 N. W. 930. See also *Cohn v. Stewart* (1877), 41 Wis. 527; *Payne v. Payne* (1906), 129 Wis. 450, 109 N. W. 105.

In this case the court is called upon to deal with a written instrument in the light of circumstances as to which there is no dispute. This presents a question of law and not of fact and so far as the *Mitchell Case, supra,* holds to the contrary, it is overruled. *Schopps v. Schopps* (1925), 188 Wis. 151, 159, 205 N. W. 829. See *Medford L. Co. v. Industrial Comm.* (1928) 197 Wis. 35, 221 N. W. 390.

Generally, the rule applicable to findings of fact made by the trial court does not apply where there are no disputed questions of fact because the reason for the rule itself fails. (In a certain class of cases inferences are said to be within the rule.) The reason for the rule is that fact finding is primarily a function of the trial court while on appeal this court deals mainly with questions of law. The position of the trial court for the determination of factual questions is obviously superior to that of the appellate court, in that the trial court has an opportunity to observe the witnesses, note their demeanor, the manner in which they testify, their intelligence or lack of it, and many other intangible things which it is impossible to place upon a court record. None of these considerations apply to a determination of a court made upon undisputed facts where the interpretation of a written instrument is under consideration. The reason for the rule failing, the rule itself fails. See *Gertz v. Milwaukee E. R. & L. Co.* (1913) 153 Wis. 475, 140 N. W. 312; *Ball v. Boston* (1913), 153 Wis. 27, 141 N. W. 8; *Weigell v. Gregg* (1915), 161 Wis. 413, 154 N. W. 645. See also *Saylor v. Marshall & Ilsley Bank* (1937), 224 Wis. 511, 272 N. W. 369.

While it is true that in a sense the determination of an intent of the maker of a written instrument from the instrument and the surrounding conditions is a search for a fact (the purpose the maker intended to manifest by the language used), the result is arrived at by the application of legal principles or rules of construction rather than by inferences

drawn from known facts although the consideration of such inferences may be involved in the process. Under such circumstances the trial court is in no better position to reach a correct conclusion than is the appellate court. While the decision of the trial court in such cases is entitled to consideration and weight, it does not have such persuasive effect as does a conclusion reached solely by inferences drawn from established facts. For a discussion of this and related matters see 2 Wigmore, secs. 242, 300. ·

We are unable to concur in the conclusion of the trial court that the testatrix intended to create a trust which should terminate at the death of her son. We find no language in the will from which it can be inferred that he was to receive the income of the estate after he was thirty-five years of age. The testatrix specifically directed that Ambrose was to receive the income until he was thirty-five years old. This does not admit of an inference that he was to receive the income thereafter. The determination of the period of the trust depends also somewhat upon what the testatrix intended by the language beginning: "I also wish my Son after he gets married, to make a Will to this Effect." The trial court did not deal with this matter in terms but from the conclusions which the trial court reached it is apparent that it considered that the language following this sentence was a command and binding upon the son; that is, that it required him to make a will in accordance with the wish of the testatrix or failing that, it created a trust for the purposes designated by the testatrix.

There are many considerations which point to the conclusion that the language employed by the testator beginning: "I also wish my Son after he gets married, to make a Will to this Effect," and ending with the sentence beginning for "The poor Students studing for the priesthood at St. Francis Seminary" was merely advisory or precatory. While the will in question was not drawn by a lawyer it is apparent that the

testatrix had a clear notion of what she wished to do and how she might accomplish it. If she had intended that her son should have only a life estate she would have had no difficulty in so providing. If she wished to create a trust for the benefit of the wife and children and other named beneficiaries, that was also within her competency. All she had to do was to say "I will and direct my son after he gets married to make a will," etc. Furthermore, had she intended to give her son only a life estate in her property, it is quite probable she would not have put the provision in relation to the disposition of her property in different sections of the will. She empowered her executor to select a reliable trust company to hold the principal in trust until Ambrose was thirty-five years of age, which indicates that she understood quite clearly the functions of a trustee. Had she intended the property to be held as a trust by Ambrose after he reached the age of thirty-five years, she would scarcely have given him "full controle." That she intended the paragraph to be merely advisory seems probable also from the fact that she wished her son to make a will so as to provide for his children and a limited provision for his wife if he died leaving a wife. Then she says: "The poor Students studing for the priesthood at St. Francis Seminary, St. Francis Wis. are to share with the Orphance in this estate after all the rest of the bequest are paid." While she wished her son to make a will disposing of his entire estate the Seminary and the Orphance were to share only in "this estate" by which she undoubtedly meant her separate estate. The fact that she included property which came to her son from her husband with property derived from her separate estate, indicates quite strongly that she was merely expressing a wish or desire on her part and that the language used was merely advisory. The final disposition was left to the discretion of the son. *Will of Jansen* (1923), 181 Wis. 83, 193 N. W. 972; 3 Page, Wills (2d ed.), p. 498, secs. 1179, 1180; Restatement, 1 Trusts, p. 76, sec. 25. See

also review of decisions in 49 A. L. R. 10; 70 A. L. R. 326; 107 A. L. R. 896.

At the time of the execution of the will, Ambrose was only twenty-one years of age. He was not then married and there is nothing to indicate that there was any immediate prospect of his marriage. Her request was not to be effective or to be considered until after his marriage. Everything considered, we have reached the conclusion that the language following the sentence "I also wish my Son after he gets married, to make a Will to this Effect," as heretofore indicated was merely advisory and did not charge her estate with a trust; that by the use of the words "full controle," the testatrix intended that her estate should vest in her son as of the time of her death to be held in trust and the income to be paid to him until he reached the age of thirty-five years, after which time he was to be the absolute owner.

We concur in the conclusion of the trial court that the portion of the will through which lines have been drawn represent canceled portions of the will and those bequests have been revoked.

We also concur in the view of the trial court that the real estate of the deceased passed as intestate property. While the real estate is referred to in the will, no attempt is made to dispose of it. Nor do we find any language in the will which disposes of a residue of the estate of the testatrix.

From our consideration of the matter, we have reached the following conclusions: (1) That the testatrix intended to vest title to the property disposed of by the will in her son and only heir at law at the date of her death.

(2) That by the language—"To my son Ambrose Francis Mechler I bequest all my personal property, he is to have all our Savings Accounts in all the Banks I and he have an account with as well as all our Building and Loan Certificates and Pass Books we have jointly with rights of Suriver,"—

she intended that upon her death the son should have the immediate enjoyment of her personal effects and cash in the banks, the building and loan stock, and the fund represented by the passbooks.

(3) That by the language "All The other Investments I, have, that is the principal is to be held in Trust for him, until he is 35 years of age, but he is to get the In Come of these Investments until he is 35 years old,"—

she intended to create a trust for the benefit of Ambrose until he reached the age of thirty-five years, at which time he was to become the absolute owner of the trust estate; in the meantime the income should be paid to him.

(4) That the portions of the will beginning with the sentence "I also wish my Son after he gets married, to make a Will to this Effect" down to and including the sentence—

"The poor Students studing for the priesthood at St. Francis Seminary, St. Francis Wis. are to share with the Orphance in this estate, after all the rest of the bequest are paid"—

was merely advisory and created no precatory trust for the benefit of the beneficiaries named.

(5) That the canceled clauses were revoked by the testatrix.

(6) That the testatrix died intestate as to the real estate owned by her.

*By the Court.*—Judgment appealed from is reversed, and cause remanded with directions to the trial court to enter judgment in accordance with this opinion.