In the Matter of the Estate of Martin KASPARI, Deceased.

Inez Mae KASPARI, Petitioner-Respondent,

v.

Charlotte DEVER, Shirley Blake, Margaret Jacobson, Barbara Henderson, Sally Jo Kaspari, Susan Lois Kaspari, and W. R. Sandager, Special Guardian of Sally Jo Kaspari and Susan Lois Kaspari, minors, Respondents,

Charlotte Dever, Shirley Blake and Margaret Jacobson, Appellants.

No. 7501.

Supreme Court of North Dakota.

July 26, 1955.

Jacque Stockman and J. E. Hendrickson, Fargo, for appellants.

Clarence G. Mead, Lisbon, for petitioner, respondent.

JOHNSON, Judge.

This appeal involves two orders entered by the County Court of Ransom County, North Dakota, allowing the final report and account of the Executrix of the Martin Kaspari estate and an order allowing a petition for partial distribution of the estate to the widow of Martin Kaspari, deceased, Inez Mae Kaspari.

The appeals from these two orders to the district court of Ransom County, North Dakota, were taken at two different times. They were heard at separate times in the district court. On the second appeal a stipulation was entered into in open court "that the court (district court) may hear both appeals and determine all the matters set forth in the two appeals, and that *it may be tried as one action.*" (Emphasis supplied.)

Pursuant to this stipulation the district court rendered its decision and the findings of fact and conclusions of law and judgment thereon were entered as though there had been only one action or one appeal involved in the district court. Where several causes are consolidated and a single judgment is rendered, such judgment may be reviewed on a single appeal. 3 Am.Jur., Appeal and Error, Section 415, p. 138.

The district court found for the respondent, Inez Mae Kaspari. The appeal to this court is based on the judgment entered by the district court. A trial de novo has been demanded.

Martin Kaspari died on the 18th day of April, 1953. He left suriving him his widow, Inez Mae Kaspari, four daughters by a first marriage, Charlotte Dever, Shirley Blake, Margaret Jacobson, and Barbara Henderson. He also left two daughters of his second marriage to Inez Mae Kaspari, Sally Jo Kaspari and Susan Lois Kaspari, both minors.

On December 14, 1948, Martin Kaspari executed his last will and testament, appointing his wife, Inez Mae Kaspari, executrix thereof without bond. The will was admitted to probate on the 15th day of May, 1953, in Ransom County, North Dakota, and the executrix qualified the same day, and letters testamentary were issued to her. She administered the estate of her deceased husband and filed her final report and account and petition for distribution on the 12th day of November, 1953. The adult respondents in the estate, Charlotte Dever, Shirley Blake, Margaret Jacobson and Barbara Henderson, signed an appearance and waiver, waiving "the service of any and all citations, papers and notices

which would otherwise be required to be given in the course of the administration of the estate of the above named deceased, * * *, and consent that the said estate be administered and final decree of distribution entered therein without further notice or citation, * * *".

On the date of the hearing on the final report and account, objections thereto were filed and may be summarized as follows:

1. That the inventory filed in the estate was not a true and correct inventory of the assets of the estate and that the note of James Blake and Shirley Blake, one of the appellants, appraised as an asset of the estate, was not an obligation due from Shirley Blake to the estate of her deceased father, and alleging that the note was canceled long prior to his death. Later it was contended that the amount represented by the note in the sum of $4500 was a gift made by the deceased to his daughter.

2. That under the last will and testament the appellant, Shirley Blake, was entitled to receive $1000 of her father's estate, plus the increased value thereof free and clear of any claim that the note was an asset of the estate.

3. That a hearing had on the inventory and appraisement filed in the estate was not authorized by statute.

4. That the deduction of $8,510.97, or half the value of joint tenancy property was improper and that the full value of the joint tenancy property was a part of the estate.

5. That the order allowing the inventory and appraisement be vacated and set aside.

6. That the estate of Martin Kaspari, deceased, was valued at $75,134.44 and that the difference between said figure and $57,-000.00, the estimate placed upon the value of the estate by Martin Kaspari, deceased, at the time of the execution of his will, be divided equally between the four adult daughters of Martin Kaspari, deceased, three of whom are appellants herein.

7. That the court determine the proportionate share of the four adult daughters of Martin Kaspari, deceased, and order payment thereof as provided by the terms of the last will and testament.

8. That the appellants revoke all waivers and receipts previously signed by them and that the court decree them null and void; and

9. That the court enter such other and further orders as may be necessary in order to fully protect the rights of the appellants in connection with the administration of the affairs of Martin Kaspari, and the final report and account filed therein.

Specifically, this appeal involves, as it did in the district court, the following orders of the county court of Ransom County:

1. The order allowing the inventory and appraisement of June 17, 1953.

2. Order rejecting the claim of Shirley Blake, dated September 3, 1953.

3. Order allowing the final report and account, dated February 1, 1954.

4. The decree of partial distribution entered March 31, 1954.

The facts in connection with these various orders appearing in the record will be discussed in connection with the disposition made of the issues involved.

The objections to the inventory and appraisement center mainly around:

1. The inclusion of the note of James Blake and Shirley Blake for $4500, appraised at $2000 as an asset of the estate.

2. The joint tenancy property, both real and personal, and co-ownership bonds.

At the time of the hearing on the final report and account, it developed that there was an omission to appraise seed grain on the farm at the time of the death of Martin Kaspari, amounting to $862.24. It was agreed and stipulated by the parties that a supplemental inventory and appraisement be made and filed to cover that item. This was done on the 14th day of January, 1954. On February 1, 1954, the county court allowed the final report and account and

found that the total value of the estate of Martin Kaspari, deceased, which included the supplemental inventory filed, amounted to $67,485.71. This was an increase of $10,485.71 over the estimated value of $57,000 made by Martin Kaspari of his property at the time he made, executed and published his last will and testament.

Included in the inventory is real property of the deceased located in Lisbon, North Dakota, the title to which was in the name of Martin Kaspari and Inez Mae Kaspari, as joint tenants and not as tenants in common with the right of survivorship. It was appraised at $4000, which is alleged to have been its full value.

There was on deposit money in the Farmers State Bank of Lisbon, Lisbon, North Dakota, in the name of Martin Kaspari and Inez Mae Kaspari, as joint tenants and not as tenants in common with the right of survivorship, in the sum of $3,055.94.

There were also listed in the inventory United States Savings Bonds, Series E, items 48 through 63 thereof, payable to Martin Kaspari or Mrs. Inez May Kaspari, or Mrs. Inez M. Kaspari, or Mrs. Inez Kaspari, or Mrs. Lucy May Kaspari, whose true name is Inez Mae Kaspari. These were all appraised at their then present value.

The joint tenancy property, both real and personal, and the bonds, were appraised at $17,021.94. At the time of the hearing on the inventory, one-half thereof was included in the estate, or $8,510.97. This sum was deducted from the total inventory value of the property, amounting to $75,134.44, leaving a net valuation of the estate of $66,623.47, to which was added the value of the property covered by the supplemental inventory, amounting to $862.24, making the total estate of Martin Kaspari $67,485.71.

The attorney for the estate of Martin Kaspari made a record of the contents of the safety deposit box. The appellants attempted to show that there were assets in the estate over, above and beyond those listed in the inventory and appraisement or contained in the list of the contents of the deposit box. None of the appellants, although present, kept a record of the contents thereof. Their testimony is vague, indefinite and inconclusive as to the contents. The best evidence is the list of the contents prepared by Mr. Mead.

The appellants did not, either in the county court or in the district court, attempt to show that the value of the property as appraised was incorrect. No testimony as to value of any of the property listed in the inventory was produced either in the county court or in the district court except as to the house of Martin Kaspari and Inez Mae Kaspari in Lisbon held in joint tenancy. It is asserted that this house was worth considerably more than its appraised value, but that becomes an immaterial issue as we shall see later. The evidence in the record indicates that all of the property that had come to the knowledge of the executrix, which included real property, joint tenancy property and co-ownership bonds were listed and appraised.

Where Series E Savings Bonds are listed in the name of two persons as co-owners, and during the lives of both co-owners, a bond so issued will be paid to either co-owner upon request without the signature of the other. If either co-owner dies while the bond remains a valid obligation, the surviving co-owner is recognized as the sole and absolute owner of the bond and entitled to a payment or reissue as though the bond had been registered in his or her name alone. Littlejohn v. County Judge, Pembina County, N.D., 58 N.W.2d 278, 280, 39 A.L.R.2d 690. All of the Series E bonds issued as set forth, remaining unpaid at the time of the death of Martin Kaspari, became the sole and absolute property of Inez Mae Kaspari. Hence the inclusion of one-half of their value in the inventory favored the appellants and augmented the estate to their benefit.

As to the joint tenancy deposit in the Farmers State Bank, under Section 6-0366, NDRC 1943, it was payable to either or the survivor.

The joint tenancy real property, consisting of the home in Lisbon, became the property of Inez Mae Kaspari upon the death of Martin Kaspari.

"A joint interest is one owned by several persons in equal shares by a title created by a single will or transfer, when expressly declared in the will or transfer to be a joint tenancy, or when granted or devised to executors or trustees as joint tenants." Section 47–0206, NDRC 1943.

This property passed to the widow by right of survivorship and not by the will. See In re Mechler's Will, 246 Wis. 45, 16 N.W. 2d 373.

"In the ancient language of the common law, joint tenants were said to hold per my et per tout or, as expressed in plain language, 'by the moiety or half and by the whole.' The true interpretation of this phrase seems to be that such tenants were seised of the entire estate for the purpose of tenure and survivorship, but of only a particular part or interest for the purpose of immediate alienation." 14 Am. Jur., Cotenancy, Sec. 8, p. 81.

"A joint tenancy is not a testamentary disposition of property. A joint tenancy is a present estate in which both joint tenants are seized in the case of real estate, and possessed in the case of personal property per my and per tout. One of the characteristics of a joint tenancy is a right of survivorship between the joint tenants, if the joint tenancy is still in existence. The right of survivorship, however, does not pass anything from the deceased joint tenant to the surviving joint tenant." Strout v. Burgess, 144 Me. 263, 68 A.2d 241, 252, 12 A.L.R.2d 939.

"Survivorship is the distinctive characteristic of an estate in joint tenancy." 48 C.J.S., Joint Tenancy, § 1 b, p. 910.

"The joint tenant who survives does not take the moiety of the other tenant from him or as his successor, but takes it by right under the conveyance or instrument by which the joint tenancy was created." 48 C.J.S., Joint Tenancy, § 1 b, p. 911.

Joint tenancy is not an estate of inheritance; a joint tenant who dies leaving a surviving tenant has no interest which he may devise. Hoeffner v. Hoeffner, 389 Ill. 253, 59 N.E.2d 684.

The title to the house in Lisbon, appraised at $4000, vested in Inez Mae Kaspari as the surviving joint tenant under the joint tenancy survivorship deed thereto in favor of Martin Kaspari and Inez Mae Kaspari. That property was not a part of the estate of the deceased. The inclusion of one-half of the value of this property in the estate was favorable to the four daughters of the deceased and increased their proportional share of the estate under the terms of the will beyond the requirements imposed by law.

For estate tax purposes joint interests are included in determining value of the property subject to the tax on transfers of estates. Section 57–3706, NDRC 1943. Such inclusion does not, however, change the title status of the property resulting upon the death of a joint tenant where survivorship of real and personal property, or co-ownership rights are involved of United States Savings Bonds. Except for estate tax purposes, it was unnecessary for the executrix to include in the inventory joint tenancy property held with right of survivorship by her and her husband. This also applied to co-ownership bonds. When she accounted for half of the value of all such property, she was doing more than the law required. The inventory is not objectionable on the ground that the joint tenancy property was deducted on a one-half basis of the value thereof.

Our statute provides for a hearing on an inventory and appraisement for the purpose of hearing objections thereto concerning the homestead and other exempt property. Section 30–1607, NDRC 1953 Supp.

There is no other statute authorizing a hearing on the inventory.

Under the facts in this case it became necessary for the county court to determine the exact value of the estate of Martin Kaspari to enable it to ascertain accurately whether the value thereof was increased or decreased over his estimate and thus apply such proportional increase or decrease to the legacies provided for the appellants in paragraph two of the will. The court, upon filing of the inventory, issued a notice hearing inventory and appraisement dated May 28, 1953, which called for a hearing thereon on the 15th day of June, 1953, at ten o'clock in the City of Lisbon, Ransom County, North Dakota. Although waivers had been filed by the appellants, it appears that the notice hearing inventory and appraisement was mailed on the 28th day of May, 1953, registered mail to Charlotte Dever, Shirley Blake, Margaret Jacobson and Barbara Henderson. An affidavit of mailing is in the record attached to which are four registry receipts and four return cards showing that each of said persons received said notice of hearing between the 1st and 3rd day of June, 1953. No one appeared on behalf of the appellants to object to any part or portion of the inventory as filed. An order allowing it was filed on the 17th day of June, 1953.

It was not until the final report and account was filed by the executrix in November, 1953, and on the date set for hearing thereon that the appellants made any objections to the appraisement of the estate. They were on notice of the hearing on the inventory and failed to make objections thereto.

It is strenuously argued that the hearing on the inventory was not authorized by statute and that the order allowing the same be vacated and set aside. It was incumbent upon the court under the last will and testament of Martin Kaspari, deceased, to finally determine the exact value to be placed on his property in order to distribute it properly as provided by the will. Under Section 111 of the North Dakota Constitution and Section 27-0702, NDRC 1943,

the county court has exclusive jurisdiction in probate and testamentary matters. Under our statutes the court has the power to direct and control the conduct and settlement of the accounts of executors and administrators; to enforce the payment of legacies, the distribution of estates of decedents, and the payment or delivery by executors and administrators of money or other property in their possession belonging to the estates; and, with respect to any matter not expressly provided for in the code, to act as nearly as may be according to the provisions of the title Judicial Procedure, Civil, and to exercise such other incidental powers as are necessary to carry into effect the powers expressly conferred. Section 27-0709, subsections 4, 6, and 18, NDRC 1943. Under the constitution and the statutes, the county court had the authority to determine the value of the estate of Martin Kaspari, deceased. It was a necessary step in the complete settlement of the estate. The court was within its jurisdiction in issuing the order allowing the inventory and appraisement. That order determined that the total value of the estate of the deceased amounted to $67,485.71. There was no competent evidence introduced at any stage of the proceedings involved to dispute the values thus determined.

The only other remaining issue on the inventory is whether the note of James Blake and Shirley Blake was an asset of the estate. It will be noted here that if the note of James Blake and Shirley Blake in the sum of $4,500 is not an asset of the estate, Shirley Blake will be the chief beneficiary. Her three sisters will suffer a detriment by reason thereof to the extent of their proportionate interest in the appraised value of the said note under the terms of the will.

In January, 1946, James Blake and his wife, Shirley, were about to build a home. Temporary arrangements had been made to purchase three government granaries to use in the construction thereof, and secure a loan to finance the building. The testator and five or six of his relatives were present talking this over, and the deceased, Martin

Kaspari, stated to his daughter and son-in-law that they should build a suitable home; that he would give them the money. Subsequent actions of the parties would indicate that this meant an advance or a loan to them. It was estimated at that time that they would need about $2,000. Thereupon the deceased gave James Blake, his son-in-law, a check in that amount. This check is in evidence. The Blakes were further advised that if they needed additional money to complete the construction of their home the deceased would advance such further sums. On July 15, 1946, he issued another check to J. E. Blake for the sum of $1,000. On October 5, 1946, Inez Mae Kaspari issued another check for $750. On October 26, 1946, she gave another check to James Blake in the sum of $500 and on November 12, 1946, a further check in the sum of $250. The total of these checks. amounted to $4,500.

On January 29, 1947, James Blake and Mrs. James Blake signed a note to Martin Kaspari for $4,500 payable January 29, 1957. The note did not provide for interest. Prior to the execution of the note, Mr. and Mrs. Blake had forwarded to Martin Kaspari the sum of $40, which was endorsed on the note after it was executed. The payment, according to the note, was received on January 21, 1947, or just a few days before the note was executed. Thereafter the Blakes paid $520 over a period of two years. These payments were endorsed on the note. At no time did either Shirley Blake or her husband assert that the note was not a valid obligation. On cross examination Shirley Blake was asked:

"What you paid was what you planned on doing, was to gradually pay the note up, and when it matured, it would be paid, didn't you? A. If we could."

The court, in the course of the trial, asked Mrs. Blake this question:

"Mrs. Blake, why did you make payments to your father during those months, why did you send him this money? A. Well we had the money to give him."

The actions of the parties indicate that neither of them ever considered the money advanced a gift of Martin Kaspari. The only testimony in the record of a gift was offered by Osmund B. Jacobson, a son-in-law, who relates conversations to that effect with the deceased. These conversations, however, do not overcome the presumption that the balance of the note is a valid obligation due the estate. They are not so convincing as to overcome other facts in this case and the actions of the parties with reference to the execution and the payments endorsed on the note. The note had not been surrendered to the Blakes at the time of Martin Kaspari's death. It was found among his assets.

■ "Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration; and every person whose signature appears thereon to have become a party thereto for value." Section 41–0301, NDRC 1943.

The burden to sustain a defense of want of consideration in an action on a note is on the defendant. Goldammer-Cranna-Weaver Co. v. Price, 60 N.D. 272, 234 N.W. 63.

"An existing legal obligation resting upon the promisor, or a moral obligation originating in some benefit conferred upon the promisor or prejudice suffered by the promisee, also is a good consideration for a promise to an extent corresponding with the extent of the obligation, but no further or otherwise." Section 9–0502, NDRC 1943.

■ The appellant, Shirley Blake, admits that the $4,500 note was a moral obligation. The burden of showing want of consideration sufficient to support a defense to a negotiable instrument lies with the parties seeking to invalidate or avoid it. Both the county court and the district court found that the $4,500 note signed by James Blake and his wife, Shirley Blake, otherwise known as Mrs. James Blake, one of the appellants in this action, was a valid obligation and constituted a part of the assets of the estate of Martin Kaspari, de-

ceased, and therefore, subject to administration and distribution therein. The determination of the district court is entitled to appreciable weight. The evidence amply bears out its finding.

▮ In the case of Zeman v. Mikolasek, 75 N.D. 41, 25 N.W.2d 272, this court held that to constitute a valid gift inter vivos there must be an intention on the part of the donor to then and there transfer title to the property to the donee, coupled with an actual and constructive delivery of the property of a nature sufficient to divest the owner of all dominion over the property and to invest the donee therewith. Sections 47–1106 and 47–1109, NDRC 1943.

▮ The facts in this case negative any gift inter vivos of the funds involved. After $4,500 had been advanced by Martin Kaspari, and Mr. and Mrs. James Blake had paid $40 to apply on the advances, they signed a note for the total amount of the advance, which is an indication that as of the time there was no intent to donate the funds.

"It is a general rule that when a claim of a gift is not asserted until after the death of the alleged donor the evidence must be clear and convincing of every element requisite to constitute a gift." Medin v. Brookfield, 66 S.D. 209, 213, 281 N.W. 97, 99.

In this case the court cited the case of Whalen v. Milholland, 89 Md. 199, 43 A. 45, 44 L.R.A. 208, and quoted therefrom as follows:

" 'Mindful of the facility with which, after the alleged donor is dead, fraudulent claims of ownership may be founded on pretended gifts of his property asserted to have been made while he was living, it is but a salutary precaution which demands explicit and convincing evidence of every element needed to constitute a valid donation, whether it be a donation inter vivos or mortis causa. Even then fraudulent claims may prevail, but the rigid requirement of the clearest proof will at least diminish the number.' "

▮ If the advancement of the money was a gift, it was an idle gesture to execute a note. The signing of the note indicates that both James Blake and Shirley Blake, his wife, understood that the money advanced was not a gift, and the payments made further indicate that fact. The acceptance of the note by Martin Kaspari indicates that he did not consider the advance a gift.

The $4,500 note was an asset of the estate of Martin Kaspari, deceased, and was properly inventoried as a part thereof.

We now come to a consideration of the creditor's claim filed by Shirley Blake. The claim presented purports to cover the furnishing of necessities and the taking care of two minor daughters of the deceased, to wit, Barbara Kaspari and Margaret Kaspari during the period beginning in the fall of 1937 and ending in the spring of 1940, at $25 per month, during the months referred to. The total claim amounted to $1,574 less a credit of $14 for potatoes and a pig that was furnished by the deceased.

The claim was filed September 1, 1953. The notice to creditors was dated May 15, 1953, and was published for the first time on the 21st day of May, 1953, which according to our statutes made the last date for filing of claims the 21st day of August, 1953. The date for adjusting claims in the notice to creditors was September 3, 1953.

The claim must fail for two reasons: First, on its face it appears that the debt, if any, was barred by the statute of limitations under Section 30–1809, NDRC 1943, which provides that no claim barred by the statute of limitations at the time of the death of the deceased shall be allowed by the court either in favor of or against the estate, as a set off or otherwise; Second, the claim was not filed and presented within the time provided by statute. Our statute provides that claims against an estate must be presented within the time limited

in the notice to creditors and any claim not so presented is barred forever. Section 30–1804, NDRC 1943. This statute has been held to be one of non-claim. Graber v. Bontrager, 69 N.D. 300, 308, 285 N.W. 865, 870, and authorities therein cited. The time specified in the notice for filing claims shall be three months from the first publication thereof. Section 30–1802, NDRC 1953 Supp.

It was approximately thirteen years after the necessaries were furnished that Shirley Blake filed her claim against her father's estate. On its face, the claim was barred by the statute of limitations at the time of the testator's death.

██ It is true that no notice of hearing was given on this claim within the terms of Section 30–1808, NDRC 1943. No advantage would have accrued to the claimant by notice as provided in that statute, as the claim on its face showed that the indebtedness, if any, was barred by the statute of limitations, and further the claim was not filed and presented within the time provided by the notice to creditors. The claim was properly disallowed.

When Martin Kaspari died he was possessed of Section 13, Township 134 North of Range 55 West of the 5th P.M., Ransom County, North Dakota. Under the will this became the property of Inez Mae Kaspari, widow of the deceased. He was also possessed of certain seed grain, which has been accounted for by supplemental inventory filed in his estate. When he died none of the crops had been seeded. After his death the executrix took possession of the land and seeded it to wheat, barley, and other grain crops prior to her appointment as such. No accounting was made of the 1953 crop in the final report and account and petition for distribution. An accounting was made to the court subsequent thereto under and in connection with a petition for partial distribution. Counsel agreed that the 1953 crop amounted to $8,660.73; that the total expenditures in producing the crop were $2,158.68; that the net cash proceeds from operating the farm were $6,502.05 and that there are on hand in the granaries on the farm from the 1953 crop, approximately 800 bushels of wheat, 900 bushels of barley and 1220 bushels of oats.

The question was raised whether or not the proceeds from the income of the land for the year 1953 is an asset of the estate and to be included in the inventory of the property possessed by the testator at the time of his death, subject to distribution to the various devisees and legatees named in the will. In the case of Dolphin v. Peterson, 63 N.D. 792, 249 N.W. 784, 787, this court held that all of the property, rents, and issues of profits therefrom, must be possessed by the administrator and accounting made therefor. It also held that the statute did not deprive a devisee or legatee of a tract of land devised to her or to the rents or profits to which she may be entitled and stated:

"This does not mean, as plaintiff seems to argue, that an executor or administrator may deprive a devisee of a tract of land bequeathed to him or the rents or profits to which he may be entitled. The statute makes ample provision for protection of the rights of the devisee. It provides: 'At any time after the lapse of the time limited for filing claims, any heir, devisee or legatee may present his petition to the court for the legacy or share of the estate to which he is entitled, to be given to him upon his giving bond for the payment of his proportion of the debts of the estate.'" Section 30–2101, NDRC 1943.

██ While it was the duty of the executrix in this estate to account for the 1953 crops, they are to be distributed to the residuary legatee under the terms and conditions of the will. They belonged to her. At the time of the order of the county court decreeing partial distribution to the residuary legatee, Inez Mae Kaspari, of the section and the 1953 crop, under date of March 31, 1954, there were ample funds in the estate to pay all claims against the estate and all legacies. No injury, under any interpretation of the will, could

result to the appellants by the partial distribution.

The appellants contend that the county court was without jurisdiction to entertain the petition for partial distribution and to grant the same while there was an action pending on appeal involving the final report and account of the executrix in the estate. They cite 34 C.J.S., Executors and Administrators, § 534, p. 466, dealing with the review and effect of appeal, also Linstead v. Superior Court of Mendocino County, 17 Cal.App.2d 9, 61 P.2d 355, 356, in which the court said:

> "It has been frequently held that in a civil matter the effect of an appeal is to remove from the jurisdiction of the trial court all questions affecting the validity of the judgment or order appealed from, and while an appeal from a judgment is pending the trial court has no power to amend or correct the same. Parkside Realty Co. v. MacDonald, 167 Cal. 342, 346, 139 P. 805; Kinard v. Jordan, 175 Cal. 13, 164 P. 894; Field v. Hughes, 134 Cal. App. 325, 25 P.2d 241."

These authorities do not support the contention of the appellants in this action. The order appealed from allowing the final report and account in this estate is in no way affected by the decree of partial distribution. It constituted a separate proceeding. It was not an amendment or a correction of the order allowing the final report and account. The order decreeing partial distribution was proper and lawful since it in no way affects the rights of the appellants under the will. The assets in the estate are of sufficient amount to take care of all the legacies and other claims.

We now come to the final question involved in this appeal, the interpretation of the will insofar as it affects the appellants. The second paragraph of the last will and testament of Martin Kaspari reads as follows:

> "After payment of such debts, funeral expenses, taxes and administration expenses, I give, devise and bequeath to my four daughters born of my former marriage, and their heirs, if any do not survive me, the following sums,—
>
> To Charlotte the sum of.... $1,000.00
> To Shirley the sum of...... 1,000.00
> To Margaret the sum of.... 1,000.00
> To Barbara the sum of..... 1,000.00
>
> such legacies being dependent upon the assets of my estate being appraised at a sum equal to what I now estimate the value of my property to be to-day, namely,—$57,000.00, and if my estate, at the time of my death be appraised for more or less than the value I now place thereon, I direct that the said legacies to my daughters above named be raised or lowered proportionately, as the value of my estate is determined by the appraisal thereof to be less or greater than its present value as determined by me, as stated above."

It is the contention of the appellants that the total increased value of the estate over $57,000 should be equally divided between the four daughters of the deceased mentioned in the above quoted paragraph of his will.

The language of the will is unambiguous and all parties have agreed that it is plain and readily understandable. Apparently the appellants take the position that the word "proportionately" is to be interpreted as "equally."

The sole purpose of the court in construing a will is to ascertain the intention of the testator as the same appears from the full and complete consideration thereof. In re Glavkee's Estate, 76 N.D. 171, 34 N.W.2d 300, and authorities therein cited. Section 56–0508, NDRC 1943. When the entire will of Martin Kaspari is considered there can be no doubt as to the meaning of the second paragraph thereof. Funk and Wagnalls New Encyclopedia defines "proportion" as, "a particular species of relations subsisting between groups of numbers or quantities; the equality of ra-

tios." Ratio is in turn defined as, "the relation of two numbers to each other as determined by a division of one by the other." "Each proportion is, therefore, the result of two ratios and the problem of solving the proposition is accomplished by bringing those two ratios into equality."

The language of the second paragraph of the will of the deceased would indicate that it was his intent to give to each of his four adult daughters a 1/57th interest of his estate. He estimated that the value of his assets as of the time he executed his will was $57,000 and out of that amount he gave $1,000 to each adult daughter. To allow for any inaccuracy that might exist in his estimate, he provided that these legacies would be raised or lowered "proportionately" if his estate was valued at more or less than $57,000. If the word proportionately is subject to its ordinary accepted meaning it appears that the testator intended that each of his four adult daughters should receive the same proportion of any increase in his estate, or suffer the same decrease therein. They were to receive a 1/57th of his entire estate. Any other interpretation would seem to be unwarranted. It is clear that if the value of his assets had been accurate, then each daughter was to receive a 1/57th interest. By the use of the word "proportionately" he must have intended to increase or decrease the legacy to each on the same basis as he had provided for each based on his estimate.

The word "proportion" refers to quantity and not quality, and is appropriately and generally employed to indicate one's share or portion when the whole of a thing is distributed according to value, as when it is arranged and divided with relation to magnitude or quantity. In instruments of writing "proportions" may be employed as showing that the figures given merely express a ratio and not absolute quantities. 73 C.J.S., Proportion, p. 217. "Mathematicians define 'proportion' as a quality of ratio; that is to say, of four numbers or factors, two of them bear the same relation to each other as the other two. Thus we say, 6 is to 8 as 12 is to 16, because the relation of 6 to 8 is the same as that of 12 to 16. Usually, given three of these factors, we can easily find the fourth or missing one." Glucksman v. Board of Education, Mun.Ct., 164 N.Y.S. 351, 360. If the testator had intended that his four adult daughters share any increase equally over and above the estimated value of his assets, he could easily have expressed that intent.

When Martin Kaspari died the total value of his property amounted to $67,485.71. If we assume on the basis of the corrected inventory that Shirley's share or the share of any one of the other three adult daughters equals X, then the problem presented may be expressed in this manner:

$$57,000 : 1,000 :: 67,485.71 : X$$

This can be simplified by stating it as:

$$57 : 1 :: 67,485.71 : X.$$

Hence $67,485.71 = 57X$

Hence $\dfrac{67,485.71}{57}$ or $1,183.95$ as the share of each

adult daughter of the deceased. The results would be exactly the same if we took the increased value of the estate of $10,485.71 and divided it by 57, which would yield an increase over and above the specific legacies of $1,000 to each of the four adult daughters, of $183.95, or a total of $1,183.95 to each. The four adult daughters are, therefore, entitled to a distribution of $1,183.95 each.

The judgment of the District Court is affirmed.

BURKE, C. J., and SATHRE, MORRIS and GRIMSON, JJ., concur.