WILL OF LUNDQUIST: LUNDQUIST, Appellant, vs. CHILDREN'S HOME OF THE ILLINOIS CONFERENCE OF THE SWEDISH EVANGELICAL MISSION COVENANT OF AMERICA, Respondent.

*April 14—May 9, 1933.*

For the appellant there was a brief by *Henry A. Huber* of Stoughton and *Fred L. Holmes* of Madison, and oral argument by *Mr. Holmes.*

*Spencer Haven* of Hudson, for the respondent.

FRITZ, J.   Ludwig Lundquist appeals from a judgment admitting to probate an instrument dated May 3, 1928, and alleged to be the will of his wife, Alma Lundquist, deceased, who had also executed another instrument, dated April 15, 1930, which was held invalid on an appeal in *Will of Lundquist,* 205 Wis. 667, 238 N. W. 861.

Ludwig Lundquist objected to the probate of the instrument of May 3, 1928, on the same grounds on which he had successfully objected to the probate of the instrument of April 15, 1930, viz.:

(1) That it was procured by the exercise of undue influence.

(2) That the deceased, at the time of the execution of the instrument, was of unsound mind and not in possession of sufficient mental capacity to make a will.

(3) That the deceased, at the time of executing the instrument and for many years prior thereto, was obsessed with insane delusions; and that the making of the alleged will was governed, controlled, and influenced by, and was the product of, those delusions, among which was the delusion that her husband's brothers coveted her property, and desired her to make a will in their favor, and that if she

permitted it to go to her husband by her will or by force of law on her demise, his brothers would acquire the property from him even though he were given only a life estate or use therein.

Under the instrument dated May 3, 1928, Ludwig Lundquist was to have a life estate in his wife's property, after the payment of her debts and funeral expenses, instead of the absolute and unconditional devise and bequest of the twenty-acre farm, constituting the homestead, and all personal property thereon, which he was to have under the instrument of April 15, 1930, which was denied probate. Under both instruments the entire residue of her estate was to go to the Children's Home of the Illinois Conference of the Swedish Evangelical Mission Covenant of America.

The instrument of May 3, 1928, was not produced for the reason that, as soon as Alma Lundquist returned to her home on April 15, 1930, after executing an instrument as her will on that day, she tore and burned up the instrument of May 3, 1928. Under those circumstances, the later instrument having 'failed to become effectual, the effort to revoke the earlier instrument is treated as relative and dependent upon the efficacy of the later disposition, which was intended to be substituted. As was said in *Will of Marvin*, 172 Wis. 457, 179 N. W. 508:

"It is a well established rule that if a testator cancels or destroys a will with a present intention of making another and new disposition of his property or a part thereof, and the proposed new disposition fails to be carried into effect, the presumption in favor of a revocation by the canceling is repelled and the will stands as originally made." See, also, 40 Cyc. p. 1188; 62 A. L. R. 1401.

A carbon copy of the instrument of May 3, 1928, had been preserved and was produced by Mr. H. H. Dean, who, as attorney for Alma Lundquist, drew that instrument. He testified that he accompanied her to a bank to supervise her

execution of the original instrument as her will, and that, in her presence, he had requested two of the bank employees to act as attesting witnesses. He stood on the lobby side of a counter while the testatrix and the two witnesses were at a desk within the counter, where he saw each of them, in the presence of each other, sign in the proper places on the original instrument. He then picked up the signed instrument and knew that the signatures thereon were the signatures of the testatrix and the witnesses, and he inserted the three names, as signed, in the proper places in the carbon copy. He handed the original to the testatrix, and kept the copy until he produced it on the trial. Both of the attesting witnesses testified that they had no recollection of having signed the instrument as attesting witnesses. However, the instrument, as appears from the copy, had a comprehensive and well-drawn attestation clause, and Mr. Dean's testimony as to the manner and circumstances under which the original instrument was signed by the testatrix and the witnesses, in their respective capacities, and as to the accuracy and completeness of the copy which he produced, afford positive and convincing proof in support of the trial court's conclusion that the document produced was a correct and complete copy of the instrument, which had been duly executed as a will by Alma Lundquist on May 3, 1928.

On the other hand, the court's findings that the will of May 3, 1928, was executed by Alma Lundquist without any undue influence exercised upon her by anything, and that she suffered from no delusions or obsessions which influenced the making of the will, are contrary to the great weight and preponderance of the evidence. All of the proof which was submitted on the contest in relation to the instrument of April 15, 1930, was again received in evidence on the contest in relation to the instrument of May 3, 1928. That proof was carefully reviewed on the appeal to this

court, and is stated with considerable detail in the opinion which was then filed. *Will of Lundquist, supra.* No restatement is necessary of the facts and circumstances which were then considered of controlling significance. In relation to that proof we then said, in part:

"The important question upon the trial of this contest was not alone whether the deceased had, at the time of executing the instrument, testamentary capacity as defined by law, but whether such testamentary capacity was affected by any of her delusions. The controlling issue in this case is whether the delusions and obsessions of the deceased materially influenced the provisions of her will or, as it may be otherwise expressed, materially affected her will as made. . . .

"When all of the facts and circumstances are considered, this will is not only unnatural but decidedly unjust. Its very provisions, when considered in connection with the undisputed facts, namely, that her husband was her only heir at law; that for over thirty years he had cared for her and treated her kindly; that she bore him no ill will and that she left no property except that which he had given her or which had been added thereto as a result of their joint labors, give rise to questions and doubts. One naturally asks, why? The record reveals the answer. She was insane and her obsessions and delusions relative to her husband's brothers controlled and influenced her in the making of her will." (Pages 674, 675.)

"The undisputed fact of her insanity makes it impossible for us to see in her attitude toward her husband's brothers and her beliefs in regard to them, anything but insane delusions. We entertain no doubt that the delusions of the deceased relating to her husband's brothers materially influenced her alleged will and that it would have been quite different but for the delusions. We conclude that the finding of the court to the contrary is against the great weight and clear preponderance of the evidence." (Page 676.)

All that is also applicable to the same extent to that proof and its bearing upon the instrument of May 3, 1928. On both contests the proof as to the physical and mental condi-

tion of the testatrix and her transactions and relations with, and her attitude toward, her husband and his relatives, as well as the other beneficiaries under her wills, during all of the thirty years of her married life, was equally involved.

That proof establishes that the delusions and obsessions, which we have held unduly influenced and materially affected the testatrix to such an extent as to render the instrument of April 15, 1930, invalid as a will, also existed and were as fully operative when she undertook to make a will on May 3, 1928. In addition to that proof, there was, on the one hand, the further testimony, on the trial of the last contest, of four witnesses as to the existence of her delusions and obsessions in relation to her husband's relatives and their designs to obtain his and her property; and there was, on the other hand, the further testimony of six witnesses as to her ability and shrewdness in her business transactions and that she did considerable house and farm work, and accompanied her husband to town, etc. However, that additional testimony is but cumulative to similar testimony admitted on the first trial in relation to those propositions, and it effects no material change in the former record in respect to the ultimate and crucial proposition that the testatrix had delusions as to her husband's brothers, and that she labored under the obsession that it was up to her to defeat their designs upon her property by not devising any part thereof to him, excepting to the extent of a life estate. On the trial in relation to the May 3, 1928, instrument, the three physicians, whose testimony was considered of considerable significance on the former appeal, gave additional testimony which was also largely cumulative. However, in connection with repeating their findings as to the delusions, obsessions, and insanity of the testatrix, they were positive that, in attempting to make a will on May 3, 1928, she was in the same condition, and activated by the same delusions and obsessions on May 3, 1928, as on April 15, 1930.

Furthermore, there appears to be so little difference between the actual value of the provision for Ludwig Lundquist under the instrument of May 3, 1928, and the value of the homestead devised to him under the instrument of April 15, 1930, that the result under the former is as unnatural and unjust as under the latter. The substantially equivalent, unjust and unnatural result under the two instruments, made with an interval of two years between them, demonstrates the continuing and persistent character of the influence which the delusions and obsessions had upon the testatrix. As there is no material change in the proof which established the existence of the insane delusions and obsessions, and the manner and extent to which the testatrix was materially influenced thereby, there is now no sufficient reason for disregarding our former conclusion that the delusions and obsessions improperly influenced the testatrix in making a will to such a material extent that the instrument would have been quite different but for those delusions and obsessions. The trial court's finding to the contrary in relation to the instrument of May 3, 1928, is as much against the great weight and clear preponderance of the evidence as was the trial court's finding in relation to the instrument of April 15, 1930.

It follows that the judgment now under review must likewise be reversed, and that admission to probate of the instrument of May 3, 1928, as the last will of Alma Lundquist, must be denied.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment in accordance with the opinion.