ESTATE OF RAUCHFUSS: RAUCHFUSS, Administrator, Appellant, vs. GIFFORD and others, Respondents.

*June 5—September 12, 1939.*

*Alvin M. Strnad* of Milwaukee, for the appellant.

For the respondents there were briefs by *Scheinfeld, Collins, Durant & Winter,* attorneys for Eskell Gifford, and by *Elmer S. Owens,* guardian *ad litem* for Bessie Rauchfuss, and oral argument by *Mr. Elmer Winter, Mr. Owens,* and *Mr. Eugene Wengert,* all of Milwaukee.

The following opinion was filed June 30, 1939:

FRITZ, J.   A photostatic copy of the instrument in question appears herewith:

I, Frank Rauchfuss, of the City and County of Milwaukee, State of Wisconsin, being of sound and disposing mind and memory, do make, publish and declare this, my last will and testament hereby revoking all former wills, bequests and devices by me made.

First: I give, devise and bequeath to my son Frank Rauchfuss, Jr., who resides at 2237 South Woodward Street, in the City and County of Milwaukee, State of Wisconsin, the sum of *three* Thousand ($4000.00) Dollars, in bonds, he to have the right to select any bonds which he desires to make this amount.

Second: I give, devise and bequeath to my son Frank Rauchfuss, Jr., all of my interest in the real estate located at 2237 South Woodward Street, in the City and County of Milwaukee, State of Wisconsin, he to assume the mortgage and all other obligations against said property.

Third:  I give, devise and bequeath to my son Frank Rauchfuss, Jr., all of my household goods and effects same in my opinion being of no monetary value.

Fourth: I give, devise and bequeath to my sister Alma Bayer, who resides at Falls on the Salle, Albracht-Strasse #40, Germany, the sum of Two Hundred and Fifty ($250.00) Dollars.

Fifty: I give, devise and bequeath to my sister Bertha Linge, Schmalenfelder Street #13 apt. Hamburg, Germany, the sum of Two Hundred and Fifty ($250.00) Dollars.

situated, after all of my just debts and obligations have been
paid to my grandchildren, namely. Violet E.Rauchfuss, Bessy A.
Rauchfuss and Frank Rauchfuss , lll, and to any grandchildren who
may be born later.  This property to consist of certain bonds and
real estate known as 2120 and 2122 and 2250 South Woodward Street,
in the City and County of Milwaukee, State of Wisconsin.

Eighth:  I hereby direct that upon reaching the age of twenty-
five years of age each of my grand children is to receive the sum of
Five hundred 500. 200. Two Thousand (2000.00) Dollars, from their share of my estate, however,
when a payment is made of this sum each of the grand children is
to receive a proportionate interest in the estate at the time the
payment is made.  This may be done by making an audit of the part
coming to all of the grand children and allowing each to share in
an interest or any increase in the value of the estate so set apart
for them.

I hereby make, constitute and appoint my said son, Frank
Rauchfuss, Jr., sole executor of this my last will and testament and
request that he furnish a surety bond for the faithful performance
of his duties as such executor:

In WITNESS WHEREOF, I have hereunto set my hand and seal at the
City and County of Milwaukee, State of Wisconsin, this 28th day of
October, 1931.

_____(Seal)

Signed, sealed, published and declared by the said testator,
Frank Rauchfuss, as and for his last will and testament, in the
presence of us, who, at his request, in his presence, and in the
presence of each other, have hereunto subscribed our names as
attesting witnesses.

_____  residing at 2363 So. Kinnic ave Milwaukee, Wisconsin.

_____  residing at 2511 So. Teely st.
                             Milwaukee,Wisconsin,

The court's findings of fact, so far as material on this
appeal, are to the following effect.  On October 28, 1931,
Frank Rauchfuss, Sr., properly executed his will in writing.
Several months before his death on June 29, 1936, he made
certain crosses through some devises and bequests of his will,
drew lines through the provisions of other bequests and de-
vises, changed the amount of the legacies to his grandchildren,
struck out the provision requiring his executor to give bond,

and then went to the home of his son, Frank Rauchfuss, Jr., and gave the altered will to his granddaughter, Violet E. Rauchfuss, a stenographer, telling her to keep it pending his further orders, and stating to her that he wanted to and would make another will and asked his granddaughter to draft the same for him, using the old form of the will as a model for the purpose, and that she should keep the old will and he would come over when he got ready and make a new will and have his said granddaughter draw it up for him just as he wanted it to be, following directions he would then give her and using the old will as a model or form for a new will making disposition of his property. He never made the new will, but a short time before his death he again told his granddaughter he was pretty near ready to make it. A portion of the seventh paragraph of the will, which was at the bottom of sheet one and had been cut off, was the introductory part of the residuary clause disposing of the remainder of his property by specific bequests to his three grandchildren in trust. The court concluded that the revocation and alteration by the testator of his will of October 28, 1931, was relative and conditional upon his making a new will disposing of his property. In addition the court found and concluded that it could reconstruct the will by supplying certain provisions for parts which had been cut off of sheet one, and otherwise canceled and obliterated by the testator; and that the alterations, mutilation, and changes now found were conditional and relative upon the execution of a new will by the testator, and no new will having been made, the will dated October 28, 1931, as it was at the time of its execution and as reconstructed in the court's findings is his last will and testament and is admitted to probate in such reconstructed form.

The crucial issue on this appeal is whether the court's finding and conclusion that the testator's alteration and revocation of the will was but relative and conditional upon his making a new will is contrary to the clear preponderance of

the evidence in view of the physical condition of the instrument and the proof in relation thereto. The applicable statutory provision reads:

"No will nor any part thereof shall be revoked unless by burning, tearing, canceling or obliterating the same, *with the intention of revoking it,* by the testator or by some person in his presence and by his direction. . . ." Sec. 238.14, Stats.

In view of the italicized clause "with the intention of revoking it," the legal consequences of the testator's acts in canceling, obliterating, and cutting off substantial parts of the original will depend upon whether he did so with the intention of revoking the will. If his acts were committed with but the present intention of making another will and he failed to carry that intention into effect, then the presumption in favor of a revocation by such acts would be repelled and the will could stand as originally made. *Will of Marvin,* 172 Wis. 457, 179 N. W. 508. Under the so-called "doctrine of dependent relative revocation," it has been held that if a testator cancels or destroys a will with a present intention to make a new will as a substitute for the old and the new will is not made, or, if made, fails of effect for some reason, it will be presumed that the testator preferred the old will to an intestacy, and therefore the old testament will be given effect. 28 R. C. L. p. 182, § 141; *Will of Lundquist,* 211 Wis. 541, 248 N. W. 410; *Appeal of Strong,* 79 Conn. 123, 63 Atl. 1089; *In re Parker's Will,* 100 Misc. 219, 165 N. Y. 702; *In re Thomas' Will,* 76 Minn. 237, 79 N. W. 104; *McIntyre v. McIntyre,* 120 Ga. 67, 71, 47 S. E. 501. However, as is stated in the case last cited,—

"The mere fact that the testator intended to make a new will, or made one which failed of effect, will not alone, in every case, prevent a cancellation or obliteration of a will from operating as a revocation."

In the case at bar it appears that when Frank Rauchfuss, Sr., executed the will of October 28, 1931, he had an estate of about $25,000, which thereafter depreciated to about $11,000. By the clear preponderance of the evidence, in-

cluding the physical facts apparent upon the face of the instrument in question, it is established that the testator made the cancellations and obliterations and cut off substantial portions of the original will at various times as his estate depreciated in value; and that by finally striking out the paragraphs designated as "First," "Second," "Fourth," and "Fifty," and cutting off all of the sixth and part of the seventh paragraphs,—leaving intact only inconsequential provisions appointing an executor and disposing of household effects, which he declared to be of no value,—it was his intention to unconditionally cancel and revoke the will in its entirety. That such was his intention is confirmed by the uncontradicted testimony of his granddaughter, Violet E. Rauchfuss, that when he brought the instrument to her in its present deleted, marked up, and shorn condition, he told her he had made the marks thereon and had cut off part, and therefore it "wasn't any good any more;" that she was to use the old instrument to get the form for executing a new will when he came and instructed her to do so; but that he never asked her to prepare a new will during the seven months which elapsed between the time of that conversation and the time of his death. In view of the facts thus established, and the absence of proof of any indication by the testator that the revocation of his original will, which he said "wasn't any good any more," was contingent or dependent upon his execution of a new will, there is no sufficient basis in the evidence to establish that there then existed such a present intention to make a new will as is essential to repel the presumption which results from such acts of revocation. When, in connection with established facts as stated above, there is considered the fact that those acts were sufficient to destroy any plan of distribution under the will, it is manifest beyond doubt that the testator positively intended that the purported will should no longer be in force, and a finding that his revocation was conditional upon the effectiveness of a new testamentary disposition cannot be sustained.

*By the Court.*—Order reversed, and cause remanded with directions to enter an order denying the probate of the will.

FAIRCHILD, J. (*dissenting*). The rule of law which I deem to be controlling does not result in a different disposition of the property of the deceased, but it gives effect to the unrevoked portions of the will. I cannot agree with the view that the entire instrument was revoked, because a reading of the uncanceled portions shows that a complete will remains. The testator did not cancel the expression of his intention to make a will, the disposition of his household furniture, the appointment of an executor, the attestation clause, or the evidences of due execution. An instrument which merely names an executor, without making any disposition of property, is a will. *Mulholland v. Gillan* (1903), 25 R. I. 87, 54 Atl. 928; *Conoway v. Fulmer* (1911), 172 Ala. 283, 54 So. 624. Although in the present case it is of little practical importance whether the property is administered by the administrator or by an executor, the uncanceled portions of the instrument constitute a will and should be probated.

The protections which the law intends to throw around a duly executed will have been expressed in sec. 238.14, Stats., quoted in the majority opinion. That section specifies how a will "or any part thereof" may be revoked. Under this statute, certain parts of a will may be revoked, leaving others in effect. *Michigan Trust Co. v. Fox* (1916), 192 Mich. 699, 159 N. W. 332. In *Will of Byrne* (1937), 223 Wis. 503, 271 N. W. 48, certain clauses of a will had been stricken and it was held that only those clauses were revoked.

Rauchfuss canceled only particular clauses of his will. If a presumption of revocation arises from the fact of cancellation, that presumption affects only the canceled clauses rather than the will as a whole, because the statute expressly provides that parts of a will may be revoked by cancellation. The only evidence that Rauchfuss intended to revoke other parts of his will is the hearsay testimony of his granddaughter to the effect that Rauchfuss said the will was "no

good." This testimony was not competent to prove revocation of the uncanceled portions of the will. *Throckmorton v. Holt* (1901), 180 U. S. 552, 21 Sup. Ct. 474, 45 L. Ed. 663. When a will has disappeared, declarations of the testator may be used to prove that it was destroyed, but revocation of an existing will cannot be proved by such declarations. *In re Valentine's Will* (1896), 93 Wis. 45, 67 N. W. 12.

It is my opinion that the unrevoked portions of the proposed will constitute the will of the deceased and should be admitted to probate.

A motion for a rehearing was denied, with $25 costs, on September 12, 1939.