Estate of Holcombe: Curtis, Appellant, vs. McGaffee and others, Respondents.

*October 10—November 6, 1951.*

644

*Kenneth E. Worthing* of Fond du Lac, for the appellant.

For the respondents there was a brief by *Ruth E. Van Epps* of Weyauwega, and *Wendell McHenry* of Waupaca, and oral argument by *Mr. McHenry, Mrs. Van Epps,* and *Miss Marian Morse* of Fond du Lac.

MARTIN, J. There are two questions involved here for our consideration, the first, whether or not the appellant Gordon Curtis has an interest in this estate and, second, whether the ruling of the circuit court admitting the will to probate and excluding the bequest to Nellie Curtis can be sustained.

In *Will of Griffiths* (1920), 172 Wis. 630, 179 N. W. 768, this court held that under sec. 2289 (now sec. 238.13), Stats., on the death of a legatee during the lifetime of a testator, the legatee's children are entitled to her share. See also *Will of Vedder* (1943), 244 Wis. 134, 11 N. W. (2d) 642.

As to adopted children, sec. 322.07, Stats., provides:

"(1) Except as otherwise provided in this section, the effect of the order of adoption is to completely change the legal status of the adopted person from that of a child of the natural parents to that of a child of the adoptive parents; . . ."

This language is clear and unambiguous, and the only rule of construction applicable is that words be given their natural

meaning. If the appellant here were the natural son of Nellie Curtis, no question would arise but that he would be entitled to the share of his mother. It is evident that under this section, so far as the adoptive parents are concerned, the child is in the same status as is a natural-born child, and under *Will of Griffiths, supra,* is entitled to take from its adoptive mother. See also *Estate of Ries,* ante, p. 453, 49 N. W. (2d) 483; 24 Marquette Law Review, 225.

Gordon Curtis is the legal heir of his adoptive mother, Nellie Curtis, to whom the bequest was made. We see nothing to be gained by belaboring the question. He does not inherit except through his deceased mother Nellie Curtis.

We come now to the question whether the trial court should be sustained in admitting the will to probate with the exception of the bequest to Nellie Curtis.

The rule that findings of the trial court cannot be set aside unless against the great weight and clear preponderance of the evidence does not apply in a case such as this where the interpretation of a will rests upon the application of legal principles or rules of construction to known facts. Under such circumstances the trial court is in no better position to reach a correct conclusion than is the appellate court. *Will of Mechler* (1944), 246 Wis. 45, 16 N. W. (2d) 373.

We find no fault with the conclusion of the trial court that other interlineations and insertions were made with a view of "dependent relative revocation;" that testatrix contemplated changes in her will. However, we cannot agree that these "contemplated changes" are consistent with the finding that in paragraph 13 there was a revocation as to the bequest to Nellie Curtis.

# Last Will and Testament

## of

### ALICE J. HOLCOMBE

I, Alice J. Holcombe, of the village of Redgranite, county of Waushara and state of Wisconsin, being of sound mind and memory, do make, publish, and declare this my last will and testament in manner following:

1. I hereby revoke any and all wills, if any, by me heretofore made.

2. It is my will that the sum of ~~Two~~ *$5* Hundred Dollars be given to the Redgranite Branch of the Union State Bank of Wautoma, Wisconsin, to be held in Trust by said Branch Bank, and that the income therefrom be used in the perpetual care and beautification of the Norton B. Holcombe (my father) Lot, where I am to be buried, each year and that in the event that the burial grounds in which my said father's lot is located establishes what is known as perpetual care, then and in that event, the said Two Hundred Dollars is to be paid over by said branch bank to the proper officers of the burial ground, and that it be used by them for the perpetual care of said lot.

3. It is my will that a suitable marker be placed at my grave as soon after my death as may be convenient.

4. After the payment of my just debts and funeral expenses and the expense of the probate of this, my will, I give, devise, and bequeath to Minnie Holcombe, widow of my deceased brother, Norton Holcombe, of Redgranite, Wisconsin, an undivided one-half of the remainder of my estate, both real and personal.

5. I give and bequeath to Shirley Gilson, my second cousin, who is now residing at Portage, Wisconsin, the sum of Two Thousand ($2,000.00) Dollars. *$10,000.00*

6. I give and bequeath to the Congregational Church of Redgranite, Wisconsin, the sum of One Thousand ($1,000.00) Dollars. *$2,000.00*

7. I give and bequeath to Shirley Barker, my second cousin, who resides at ~~Watertown~~ *Oxford, Wis.*, Wisconsin, the sum of Five Hundred ($500.00) Dollars. *$1,000*

8. I give and bequeath to my third cousin, Alice Lae Barker, who resides at ~~Whitewater~~ *Oshkosh*, Wisconsin, the sum of Five Hundred ~~($500.00)~~ Dollars. *$500*

9. I give and bequeath to Marion June Morse, my third cousin, of Fond Du Lac, Wisconsin, the sum of Five Hundred ($500.00) Dollars. *$1000*

10. I give and bequeath to Lavancia Cone, of Grangeville, Idaho, the sum of Five Hundred ($500.00) Dollars. *Calif.* *$2000*

*Mabel Costerison Oroville*

11. I give and bequeath to Ervene Jansen, of Waupaca, Wisconsin, my first cousin, the sum of Five Hundred ($500.00) Dollars. *$2,000.00*

12. I give and bequeath to Harold Holcombe, of Weyauwega, Wisconsin, my first cousin, Five Hundred ($500.00) Dollars. *$2,000*

13. All of the rest, residue, and remainder of my estate, of whatever name, title, or description, real, personal, or mixed, I give, devise and bequeath to ~~Nellie Curtis, of Waupaca,~~ Wisconsin, Mabel McGaffee, of ~~Lenora,~~ Idaho, and Mildred Costerison, of Loomis, California, in even and equal shares, share and share alike. The last three named legatees are my first cousins. *dead*

14. I hereby constitute and appoint Jacob L. Kossel,

of Wautoma, Wisconsin, as executor to carry out the provisions of this my last will, and I hereby grant to him full power and authority to sell and to encumber, to invest and reinvest, as such executor, any or all of my estate, and hereby authorize and empower my said executor to compound, compromise and settle any claim or demand which may be against or in favor of my said estate.

          In Witness Whereof, I have hereunto set my hand and seal this 9th day of December, 1941.

*Alice J. Holcombe* (Seal)

          The above instrument with no interlineations, was on the day of its date, signed, sealed, published and declared by the said Alice J. Holcombe to be her last will and testament, in the presence of us, who, at her request, in her presence and in the presence of each other, have subscribed our names hereto as attesting witnesses.

          We further certify that in our judgment and belief, said Alice J. Holcombe, is at this time, and at the time of making said will, of sound mind and disposing memory.

_____ of Wautoma, Wis.

_____ of Wautoma, Wis.

## Sec. 238.14, Stats., provides:

"No will nor any part thereof shall be revoked unless by burning, tearing, canceling, or obliterating the same, with the intention of revoking it, by the testator or by some person in his presence and by his direction, or by some other will or codicil in writing, executed as prescribed in this chapter, or by some other writing, signed, attested, and subscribed in the manner provided in this chapter for the execution of a will; excepting only that nothing contained in this section shall prevent the revocation implied by law from subsequent changes in the condition or circumstances of the testator. The power to make a will implies the power to revoke the same."

Unless the intention of the testatrix to revoke the bequest to Nellie Curtis in her will is established by clear and satisfactory evidence, paragraph 13 must stand and be given effect.

The same sort of pencil lines, additions, interlineations, etc., were made in other paragraphs of the will to make additional bequests, to increase amounts of certain bequests, and the like. The fact that there was a line drawn through the name of Nellie Curtis and the word "dead" penciled in after the paragraph, does not show by clear and satisfactory evidence an intent to revoke that part of paragraph 13. It would

have been more convincing had the testatrix drawn a line through the word "three" in the last sentence of that paragraph, "The last three named legatees are my first cousins."

The cases cited by respondents all have some other significant facts in addition to the interlineations, etc.

"In the case at bar it appears that when Frank Rauchfuss, Sr., executed the will of October 28, 1931, he had an estate of about $25,000, which thereafter depreciated to about $11,-000. By the clear preponderance of the evidence, including the physical facts apparent upon the face of the instrument in question, it is established that the testator made the cancellations and obliterations and cut off substantial portions of the original will at various times as his estate depreciated in value; and that by finally striking out the paragraphs designated as 'First,' 'Second,' 'Fourth,' and 'Fifth,' and cutting off all of the sixth and part of the seventh paragraphs,— leaving intact only inconsequential provisions appointing an executor and disposing of household effects, which he declared to be of no value,—it was his intention to unconditionally cancel and revoke the will in its entirety." *Estate of Rauchfuss* (1939), 232 Wis. 266, 271, 287 N. W. 173.

The lines drawn through certain inconsequential material in *Will of Mechler, supra,* were definite lines, and showed intent to revoke such portions. The words that were deleted and others that were added evidenced a consistent intent to revoke.

In *Will of Byrne* (1937), 223 Wis. 503, 271 N. W. 48, the testatrix drew lines through the names of her brothers, George and Patrick, where they appeared in two paragraphs of her will. A codicil was added naming another executor. There was pinned to the codicil a letter to her attorney asking that her estate be divided into four equal parts, the attorney to have one part and each of three sisters named in the will to have one part. It was contended that the cancellation marks could not be made effective because the will and the letter were dependent upon each other. The court held that her

intent to strike out the provisions for her brothers was apparent from an inspection of the instrument.

It might be mentioned that in paragraph 4 of the will, in which a one-half interest was left to Minnie Holcombe, a sister-in-law who predeceased the testatrix by two months, parenthesis marks were drawn around her name. The stipulation is to the effect that the testatrix was active and in good mental and physical health until her death. If the marks were evidence of her intention to revoke that provision of the will upon the death of Minnie Holcombe, it is significant that she did nothing to accomplish it although she had two months' time in which to do so.

Miss Holcombe was a good business woman and had accumulated a large estate. She had her will drawn by competent attorneys. She would hardly have expected to change her will by the various lightly drawn pencil notations which she made on the instrument. The marks do not indicate a finality of decision. Such notations, however, are perfectly consistent with an intention to revise her will at some future time. The notation as to Nellie Curtis may have been part of a plan to revise her will in all the respects noted thereon, but the marks in paragraph 13 are no more proof of an intention to revoke than the marks around Minnie Holcombe's name in paragraph 4.

Respondents cite 57 Am. Jur., Wills, p. 378, sec. 550, where it is stated that, in the absence of evidence to the contrary, when a will is found among testator's effects after his death in such a state of mutilation, obliteration, or cancellation as represents a sufficient act of revocation within the meaning of the applicable statute, it will be presumed to be revoked. We might here state that the original will of Alice Holcombe was in a good state of preservation. It was designated by the testatrix as her will and was found where she said it was. One will conclude from an examination of the 1941 will that it had been handled carefully and treated as

a formal instrument. From these observations it appears to us that the testatrix at all times considered this her will and intended it to be her will until such time as she decided to make the changes apparently contemplated.

It is our opinion that all pencil alterations and interlineations on the will are ineffective. Paragraph 13 which makes the bequest to Nellie Curtis should be admitted to probate as part of the will.

*By the Court.*—Judgment reversed and cause remanded for further proceedings in accordance with this opinion.

FAIRCHILD, J. (*dissenting*). There is no question about the right of the deceased to revoke her will, any part of it, or any bequest contained in it, if she decided so to do.

The situation now under consideration is so circumstanced as to clearly show that when Alice J. Holcombe knew that her cousin, Nellie Curtis, had died, she revoked the bequest under which Nellie Curtis was to share in the residue and remainder of her estate. This revocation was made because she did not care to have that portion of her estate descend in that particular channel.

She believed the revocation was effective, as she intended it to be, for she declared the instrument as it then existed expressed her will. She told Mrs. Kossel, the wife of the executor of the will, that her will was in the trunk. It was found there, and it is not disputed that Alice Holcombe struck out the name of Nellie Curtis as a beneficiary, and that, as a reason for so doing, she also wrote the word "dead."

The revocation was complete. It was not dependent on how the surplus or residue thus created was to be disposed of. She struck out that portion of the will by revocation which provided for an inheritance for Nellie Curtis.

I am of the opinion that the trial court correctly held that the marks striking out the name of Nellie Curtis indicate that

the testatrix intended to strike out that provision of her will which made provision for Nellie Curtis. We may well observe, as was suggested in *Will of Byrne,* 223 Wis. 503, 271 N. W. 48, a great deal of speculative comment may be developed by ingenious minds, but the fact remains that the testatrix intended to do something to her will, and that was to revoke the bequest to Nellie Curtis, because Nellie Curtis had died. We are not concerned with the failure to draw a new will. That failure does not affect or overcome the effective cancellation of the devise to Nellie Curtis.

The judgment of the circuit court which affirmed the judgment of the county court should be affirmed.