IN the INTEREST OF AND the ADOPTION OF ABIGAIL M.:

SCOTT A., Petitioner-Appellant,

v.

GARTH J. and Michelle J., Respondents-Respondents.

Court of Appeals

*No. 98–0393. Submitted on briefs July 1, 1998.—Decided September 8, 1998.*

(Also reported in 586 N.W.2d 21.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Thomas A. Merkle, Dean P. Laing* and *Gregory W. Lyons* of *O'Neil, Cannon & Hollman, S.C.*, of Milwaukee.

On behalf of the respondents-respondents, the cause was submitted on the brief of *Linda A. Ivanovic* of *John T. Fields & Associates*, of Brookfield.

Guardian ad Litem brief was filed by *Sheryl A. St. Ores* of *Law Offices of Sheryl A. St. Ores* of Milwaukee.

Amicus Curiae brief was filed by *Stephen W. Hayes* and *Susan E. Lovern* of *von Briesen, Purtell & Roper, S. C.* of Milwaukee.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

WEDEMEYER, P.J. Scott A. appeals from an order denying and dismissing his petition for adoption of Abigail M. because of lack of standing under § 48.90(1)(a), STATS., which provides that "[a] petition for adoption may be filed at any time if: (a) One of the petitioners is a relative of the child by blood . . . ." Scott contends that the trial court erred as a matter of law in dismissing his petition on the basis that he is not a relative of the child by blood due to the fact that he was the adopted brother of Abigail's mother. Because statutory interpretation, case law and recent legislative action compel the conclusion that Scott's status is

783

included in § 48.90(1)(a), we reverse and remand with directions.

## I. BACKGROUND

Abigail, now twenty-one months old, was born November 25, 1996, to Suzie M. and Steven M. Tragically, both of her parents are now deceased. Suzie died of cancer on May 3, 1997, and Steven was killed in an auto accident on July 19, 1997. Within days of Steven's death, both sets of grandparents filed petitions for permanent guardianship. The paternal grandparents were granted temporary guardianship. Neither set of grandparents petitioned for adoption.

On November 20, 1997, Garth J., the first cousin of Steven and godparent of Abigail, moved to intervene in the guardianship proceedings and, together with his wife Michelle J., petitioned for permanent guardianship.

On December 1, 1997, Scott, the adopted brother of Suzie and uncle of Abigail, filed a petition for her adoption pursuant to § 48.90(1)(a), STATS. Suzie and Scott were born to different parents and then adopted by the same parents. Scott was adopted in 1968, when he was ten weeks old, and Suzie was adopted in 1969, when she was five days old.

On January 21, 1998, Scott moved the court for a hearing on his petition and to bar participation of Garth and Michelle, on the grounds that they lacked standing to object to his petition under § 48.90, STATS.[1]

---

[1] Scott sought to exclude Garth and Michelle's participation on the grounds that they lacked standing to object to his adoption petition because they were not "relatives" as defined in § 48.02(15), STATS. Section 48.02(15) defines a relative as "a parent, grandparent, stepparent, brother, sister, first cousin, nephew, niece, uncle or aunt." As Steven's first cousin, Garth is

Garth and Michelle responded by moving the court to dismiss Scott's petition for adoption because he was not "blood" related to Abigail. On January 23, 1998, the trial court ruled that both parties lacked standing under § 48.90(1)(a), STATS., to file for adoption as Scott was not related by "blood" and Garth and Michelle were not "relatives" under the statute. The court then entertained and granted the petition of Garth and Michelle for permanent guardianship of Abigail. Scott now appeals.[2]

## II. DISCUSSION

*A. Standard of Review.*

This appeal calls into question the meaning of the phrase "relative of the child by blood" contained in § 48.90(1)(a), STATS. Construction of a statutory provision is a question of law which we review independently. *See R.W.S. v. State,* 156 Wis. 2d 526, 529, 457 N.W.2d 498, 499 (Ct. App. 1990), *aff'd,* 162 Wis. 2d 862, 471 N.W.2d 16 (1991). In engaging in such an exercise, our primary task is to ascertain and give effect to the intent of the legislature. Our first recourse in determining legislative intent is to examine the language of the statute itself. Here, no one challenges the clarity of the language, but rather how it should be construed. Divining legislative intent is not always an exact exercise especially, as in this instance, where there is very little historical trail to offer guidance.

---

a second cousin to Abigail and, therefore, does not qualify as a "relative."

[2] All proceedings in the trial court relating to the adoption of Abigail have been stayed pending this appeal.

At the outset, we note that a statute should not be construed to work an absurd or unreasonable result. "[T]he cardinal rule in interpreting statutes is that the purpose of the whole act is to be sought and is favored over a construction which will defeat the manifest object of the act." *Student Ass'n, Univ. of Wis.-Milwaukee v. Baum*, 74 Wis. 2d 283, 294–95, 246 N.W.2d 622, 627 (1976). There is room for judicial construction of a portion of a statute even though it is plain and unambiguous in its letter, where to give it a literal meaning would produce absurd results and/or involve the legislative purpose in obscurity. *See Pfingsten v. Pfingsten*, 164 Wis. 308, 313, 159 N.W. 921, 923 (1916). We note further that " '[w]hen multiple statutes are contained in the same chapter and assist in implementing the chapter's goals and policy, the statutes should be read *in pari materia* and harmonized if possible.' " *Angel Lace M. v. Terry M.*, 184 Wis. 2d 492, 512, 516 N.W.2d 678, 684 (1994) (citation and footnote omitted). Verbal components of a statute must be analyzed in relation to its scope, history, context, subject matter and object to be accomplished. *See West Allis Sch. Dist. v. DILHR*, 116 Wis. 2d 410, 419, 342 N.W.2d 415, 421 (1984). Irreconcilable conflicts are not to be confused with only apparent conflicts. 2B NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION §§ 51.01–02 at 117–38 (5th ed. 1992). Not to be ignored also is a certain modicum of common sense. With these aids in mind, we begin our analysis.

*B. Analysis.*

The issue before this court is whether Scott, the adopted uncle of Abigail, had standing under § 48.90(1)(a), STATS., to petition for the adoption of Abi-

gail. Stated otherwise, is his status, as recognized under § 48.92, STATS.,[3] impaired by the "relative by blood" provision of § 48.90(1)(a)? Scott asserts that the trial court erred as a matter of law in denying him the right to petition for Abigail's adoption because, by virtue of statutory authority and evolving case law, he, as an adopted child, has the same legal status as a natural child, and thus, has the same rights of a person born to the same parents. The effect of the trial court's decision, argues Scott, is to diminish his otherwise recognized status and to remove him from the same footing as a natural-born person as contemplated by the clear intent of the statute and the case law interpreting it.

In response, Garth and Michelle do not deny Scott's right to adopt, but insist that the right is procedurally conditioned. Those who are not related "by blood" must fulfill the six-month placement requirement under § 48.90(2), STATS., before a petition for adoption may be filed. Section 48.90(2) provides the means for a person who is not a blood relative to file a petition for adoption, stating in pertinent part: "Except as provided under sub. (1), no petition for adoption may be filed unless the child has been in the home of the

---

[3] Section 48.92, STATS., provides in pertinent part:

**Effect of adoption. (1)** After the order of adoption is entered the relation of parent and child and all the rights, duties and other legal consequences of the natural relation of child and parent thereafter exists between the adopted person and the adoptive parents.

**(2)** After the order of adoption is entered the relationship of parent and child between the adopted person and the adoptive person's birth parents, unless the birth parent is the spouse of the adoptive parent, shall be completely altered and all the rights, duties and other legal consequences of the relationship shall cease to exist.

petitioners for 6 months or more." Subsection (1) of § 48.90 does not require those who are related "by blood" to fulfill the six-month placement criteria.

To support their position, Garth and Michelle posit three arguments. First, they argue that the phrase "by blood" means exactly that, and not something else as claimed by Scott. Second, they claim that Scott's assertions notwithstanding, the statutes and case law have consistently differentiated between "blood" relatives and "adopted" relatives. Third, they argue that § 48.90(1), STATS., is procedural as distinguished from substantive, and it therefore may legally be interpreted to distinguish between adopted persons and natural-born persons in procedural matters. Because statutory interpretation, case law and recent legislative action indicate otherwise, we are not convinced.

1. Statutory Interpretation and Case Law.

At first blush, a plain reading of the phrase "relative by blood" appears obvious: if you are related by blood, you qualify to petition for adoption and if you are not related by blood, you are disqualified from petitioning for adoption under this section. Significantly, however, a literal reading of the phrase places it at odds with the overall purpose of its statutory section, thereby effectuating an unreasonable result with respect to public policy and common sense.

Since 1947, the law of adoption in Wisconsin has experienced a metamorphosis largely driven by societal concerns. How our state, as a matter of policy, has viewed adoptions has been well documented.[4] The non-traditional view of the "**Effect of Adoption**" was first

---

[4] *See, e.g.,* 1955 Report, Legislative Council on Children's Code, Chapter VII.

enunciated in Chapter 322 of the statutes in § 322.07, STATS., the precursor of the present § 48.92, STATS.[5] As pertinent to our analysis, § 322.07 provided:

> Except as otherwise provided in this section, the effect of the order of adoption is to completely change the legal status of the adopted person from that of a child of the natural parents to that of a child of the adoptive parents.

In 1951, in *Estate of Holcombe v. McGaffee*, 259 Wis. 642, 49 N.W.2d 914 (1951), our supreme court, in granting judgment to an adopted son of his deceased mother, a legatee in the subject estate, set forth its first statement concerning the import of § 322.07:

> This language is clear and unambiguous, and the only rule of construction applicable is that words be given their natural meaning. If the appellant were the natural son of Nellie Curtis, no question would arise but that he would be entitled to the share of his mother. It is evident that under this section, so

---

[5] The traditional view was well summarized in *Will of Adler v. Reinhart*, 30 Wis. 2d 250, 261–62, 140 N.W.2d 219, 225 (1966):

In the past, courts have made "an emotional appeal to the principle of consanguinity . . . ." Courts have stressed "that the idea that blood relationship always has been fundamental in the law of descent and distribution, and that from time immemorial it has been held by English-speaking people that intestate property should descend to the kindred of the blood." 51 Cornell Law Quarterly, *supra*, page 176. These concepts were undoubtedly of great importance when the rules of primogeniture and the bloodlines of nobility were matters upon which feudal tenures depended and over which kingdoms could rise and fall. Adoption was not recognized by the common law. 51 Cornell Law Quarterly, *supra*, page 155.

This theory is completely contrary to the present attitude of the family and the public toward adoption.

far as the adoptive parents are concerned, the child is in the same status as is a natural-born child, and . . . is entitled to take from its adoptive mother.

*Id.* at 645–46, 49 N.W.2d at 917.

Shortly thereafter, in 1954, the supreme court had occasion to revisit § 322.07, STATS., in *Estate of Nelson v. Hogie*, 266 Wis. 617, 64 N.W.2d 406 (1954). The sister of a man who died intestate petitioned for a determination that she was the sole heir of the estate. A second sister had died before the decedent leaving an adopted daughter. The daughter opposed the petition. In ruling in favor of the adopted daughter the court stated:

As we held in *Estate of Holcombe* . . . that sec. 322.07 gave the adopted person the status of issue of his adoptive parent, so now we must consistently hold that the same statute gives him the status of that parent's lineal descendant. If he is issue he must be a lineal descendant. No other construction can be placed upon the clear and unambiguous statutory words.

*Id.* at 619, 64 N.W.2d at 407.

Further explication of the scope of the statute's intent occurred in *Will of Adler v. Reinhart*, 30 Wis. 2d 250, 140 N.W.2d 219 (1966), when the court observed that "former decisions construing former statutes have been most reluctant to confer a 'first class' status on an adopted child." *Id.* at 257, 140 N.W.2d at 223. When, however, § 322.07, STATS., was passed, it provided in pertinent part: " 'the effect of the order of adoption is to *completely* change the legal *status* of the adopted person from that of a child of the natural parents to that of a child of the adoptive parents . . . .' " *Id.* at 259, 140

N.W.2d at 224. The court concluded that "whatever doubts there may have been under previous statutes, this statute gives the artificial relation the same effect as a natural one." *Id.* Summarizing, it noted:

> The tendency, desire, and public policy in every adoption is to completely absorb an adopted child into a family unit and to make his status in fact indistinguishable from that of a natural child, *not only in his relationship with his adoptive parents, but, also, with the general public and with relatives who are not immediate members of the family circle.*

*Id.* at 262, 140 N.W.2d at 225 (emphasis added by italics and underlining).

 Section 322.07, STATS., was repealed by Chapter 575, Laws of 1955, and in its place § 48.92, STATS., was enacted as part of the Children's Code. With this assimilation, the law of adoption was provided another helpful canon of construction, i.e., it shall be liberally construed to give effect to the main objective contained in the Children's Code: the best interests of the child. *See* § 48.01(1), STATS.; *Angel Lace M.*, 184 Wis. 2d at 522–23, 516 N.W.2d at 688 (Heffernan, J., dissenting). Moreover, in recreating this section, the legislature modified the language of the effect of adoption to "recast [the effect] in general terms of status rather than in terms of specific rights." *Estate of Topel v. Topel*, 32 Wis. 2d 223, 226, 145 N.W.2d 162, 164 (1966). In the words of our supreme court:

> There is no exception in the present statute to this complete substitution of adoptive relationship for the natural relationship. We think the intent of sec. 48.92, Stats., from its language is to effect upon adoption a complete substitution of rights, duties,

> and other legal consequences of the natural relation of child and parent and kin with those same rights, duties, and legal consequences between the adopted person and adoptive parents and kin.

*Id.* at 227, 145 N.W.2d at 164; *Cf. Soergel v. Soergel Raufman,* 154 Wis. 2d 564, 573, 453 N.W.2d 624, 627 (1990). Thus, regardless of the issue before the appellate courts of this state, there has been and continues to be equality in that an adoption creates a status in the adopted person embodying rights and privileges coextensive to that of a natural-born child.

In juxtaposition to § 48.92, STATS., and the source of this appeal, is the requirement in § 48.90(2), STATS., of a six-month residence for the proposed adoptee child unless the adoptive parent is a "relative by blood." The phrase "related by blood" or "relative by blood" first appeared in § 48.90(1)(a), STATS., by the enactment of Chapter 306, Laws of 1959. This language appeared without any express limitations despite the strong and clear explication as to the effect of an adoption declared in *Holcombe* in 1951 and *Nelson* in 1954. Moreover, no subsequent amendments to § 48.90(1)(a) or § 48.92 limited or modified this case law. Further, these holdings declaring the equalization of status for the adopted child were reinforced in *Adler* and *Topel* in 1966, and *Soergel* in 1990. We have searched for the legislative history of the current § 48.90(1)(a) "relative by blood" requirement, but have not found any documentation providing a rationale for the amendment enacted in 1959.[6] In the absence of any information suggesting any reason to alter the equalization goals of adoption,

---

[6] Subsequent to 1959, this subsection has been amended in 1961, *see* Laws of 1961, ch. 231, and Laws of 1973, *see* Laws of 1973, ch. 263, but the changes are irrelevant for the purposes of this appeal.

we can only conclude that, with the interpretative case law readily accessible, the legislature intended to include adoptees in the classification of "relative by blood." *See State v. Trongeau*, 135 Wis. 2d 188, 192–93, 400 N.W.2d 12, 14 (Ct. App. 1986) (legislature is presumed to act with full knowledge of existing laws).

From this brief review, we are compelled to reach certain results. Since the appearance of § 322.07, STATS., and its successor § 48.92, STATS., its provisions have been consistently interpreted. Adopted children have been treated as equal in every respect to natural-born children. They are regarded as equivalent to a "natural born" child, as "issue" and as "lineal descendants" of an adoptive parent. Based on this consistent interpretation, no canon of construction can, in logic or common sense, be offended by including an adopted person in the category of "by blood" under § 48.90(1)(a), STATS., for the purpose of petitions for adoption.

Further statutory analysis lends additional support for our conclusion. Section 48.90(1)(a), STATS., requires a "relative" by blood to file the petition for adoption. Section 48.02, STATS., provides the definitions for Chapter 48 unless otherwise stated. Subsection (15) defines "relative" as: "a parent, grandparent, stepparent, brother, sister, first cousin, nephew, niece, uncle or aunt. This relationship may be by consanguinity or direct affinity." Since there is no statutory definition for the term "consanguinity" we may resort to dictionary definitions to arrive at common and approved usage. "Consanguinity" is "[a] quality or state of being related by blood or descended from a common ancestor." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 482 (3d ed. 1993), or "[o]f the same lineage, or origin; having a common ancestor." AMERI

CAN HERITAGE DICTIONARY 400 (3d ed. 1992). Whereas, "direct affinity" means related by marriage. *See* AMERI CAN HERITAGE DICTIONARY 29 (3d ed. 1992). In *Estate of Nelson,* our supreme court made it abundantly clear that an adoptee has the same lineal descent as a biological family member; thus, the case suggests that an adoptee would be related by consanguinity, rather than by "affinity" or marriage. *See id.,* 266 Wis. at 619, 64 N.W.2d at 407. Thus, it is a reasonable reading of the applicable version of § 48.90(1)(a) enacted in 1959 that the legislature intended simply to exclude relatives "by affinity" (marriage) when it .amended the statute to permit only a "relative by blood" to petition for adoption under the expedited procedure.

Garth and Michelle next assert that nothing in the case law suggests that an adoptive child and a "blood" relative are synonymous. To the contrary, they argue that case law distinguishes the two, except with respect to inheritance issues. Case law belies this claim.

In *Estate of Holcombe,* the court explained that under § 322.07, STATS., "the [adopted] child is in the same status as is a natural-born child." *Id.* at 646, 49 N.W.2d at 917. *Estate of Nelson* amplified this ruling, declaring that if the adopted child "is issue he must be a lineal descendent." *Id.* at 619, 64 N.W.2d at 407. The *Topel* court declared that § 48.92, STATS., effectuated a "complete substitution" of the adopted child to that of a natural child and there is no "exception in the . . . statute." *Id.* at 227, 145 N.W.2d at 164. Finally, *Will of Adler* proclaimed that "an adopted child, has the identical status as a child born to the same parents." *Id.* at 263, 140 N.W.2d at 226. These cases demonstrate that Garth and Michelle's proposed distinction with regard to the status of an adopted child is without merit. The

case law is clear and absolute: an adopted child is afforded identical status to a natural-born child.

Garth and Michelle's final claim is that § 48.90(1)(a), STATS., is a statute which defines legal procedure and not substantive rights. They argue that because the statute addresses solely procedural law, there is no prohibition from allowing only "blood relatives" and others designated under the section from using the expedited adoption procedure. We are not persuaded.[7]

Garth and Michelle offer no authority to support this procedural versus substantive distinction nor do they develop their argument. We, therefore, decline to consider their proposition. *See In re Estate of Balkus v. Security First Nat'l Bank,* 128 Wis. 2d 246, 255 n.5, 381 N.W.2d 593, 598 n.5 (Ct. App. 1985) (the court of appeals may decline to review an issue inadequately briefed and arguments unsupported by references to legal authority).

---

[7] Garth and Michelle, in asserting that § 48.90(1)(a), STATS., is not meant to include adopted relatives, argue that § 48.977 (1)'s, STATS., definition of "relative" refers to § 49.19(1)(a)2a, STATS., in addition to § 48.02(15), STATS., to distinguish "blood relatives" from "adopted relatives" and adds the latter group to an expanded group by definition of relatives for the purposes of § 48.977 only. Thus, Garth and Michelle reason that there is no expression of intent that a relative under § 48.90(1)(a) is anyone other than one of "blood." We agree that § 49.19(1)(a)2a expands the definition of a "relative" but it does so for the purpose of § 48.977 entitled **"Appointment of relatives as guardians for certain children in need of protection or services,"** and specifically states that in "this section" "relative": means either "a relative as defined in s. 48.02(15) or as specified in s. 49.19(1)(a)2.a." Accordingly, we reject Garth and Michelle's proposed construction. Section 48.977(1)'s definition of relative expands the definition only for purposes of that section.

■

## 2. Legislative Action.

■

Our conclusion is also supported by legislative events that have transpired since the trial court's decision of January 23, 1998. Our legislature enacted 1997 Wisconsin Act 104 just three months after the trial court's decision in this case finding Scott could not petition for Abigail's adoption under § 48.90(1)(a), STATS., because his adopted status excluded him from the blood relative category. On April 14, 1998, by § 15m of the Act, the legislature passed an amendment to § 48.90(1)(a) which reads: "One of the petitioners is a relative of the child by blood or by adoption." 1997 Wis. Act 104, § 15m. Although the amendment does not reverse the decision of the trial court, its import is obvious. It is an expression of disagreement with the trial court's interpretation of the legislative intention of the subsection and an added delineation of its original design. The significance of this amendment is underscored by Sutherland's explanation: "If the amendment was enacted soon after controversies arose as to the interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act." 1A NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 22.31 at 279 (5th ed. 1992).

With this authority as a guide, we conclude that the amendment was adopted for the purpose of making manifest what the legislature had intended from the original passage of § 48.90(1)(a), STATS., in 1959. *See Gill v. Miller*, 445 N.E.2d 330 (Ill. 1983); *American Legion Mem'l Home Ass'n v. City of Grand Rapids*, 325 N.W.2d 543 (Mich. Ct. App. 1982). That is, a relative by adoption, such as Scott, should be afforded the right to

petition for the adoption of a relative under the expedited procedure of § 48.90(1)(a).

## III. CONCLUSION

The all-pervasive goal of the Children's Code in achieving the "best interests" of the child must be the beacon by which all our deliberations under the Code are guided. No obstacle ought be placed in that path. Part and parcel of this concept is the intended effect of adoption proceedings. The overall legislative scheme has been in effect since 1947 and, without substantial change, has been appropriately embodied in the content and context of the Children's Code. For the reasons set forth in this opinion, to allow a literal reading of § 48.90(1)(a), STATS., to stand in irreconcilable conflict with the recognized effect of adoption, would not only defeat the intent of decades of judicial interpretation, but would also reduce the number of reasonably expeditious paths leading to a determination of what is in the best interests of a proposed adoptee child. Where a well-delineated social policy of our legislature is clear, our obligation is to facilitate, not obfuscate. Reason and common sense compel our decision. To do otherwise would be unjust.

Such interpretation is further supported by the exposition of the legislative intent, which was recently made quite clear by the enactment of 1997 Wis. Act 104, adding the language "or by adoption" to the expedited adoption procedure contained in § 48.90(1)(a), STATS.

In sum, we conclude that the case law interpreting the Children's Code has consistently held that an adopted child is conferred the same rights, duties, and other legal consequences as a natural-born child. Accordingly, to harmonize any perceived conflict

between § 48.92, STATS., and § 48.90(1)(a), STATS., we must read § 48.90(1)(a)'s "related by blood" requirement to include a relative by adoption.

Therefore, we reverse and remand this matter with directions to the trial court to reinstate Scott's petition and conduct a hearing to consider Scott's request to adopt Abigail.

*By the Court.*—Order reversed and cause remanded with directions.

FINE, J. *(dissenting)*. Section 48.90(1), STATS., 1995–96, provides, as material to this appeal:

> A petition for adoption may be filed at any time if:
>
> (a) One of the petitioners is a relative of the child by blood.

The majority, like the legendary Merlin of old, has used the alchemy of interpretation to transform what it sees as the dross of statutory insensitivity into gold that reflects a more enlightened view of public policy. With a magic wand of words, the majority transmutes "is a relative of the child by blood" into "is a relative of the child"; poof, by the majority's magic, the word "blood" is gone!

We exceed our authority as judges when we ignore the clear language of a statute.[1] *See State v. Martin,*

---

[1] The majority notes that the legislature has amended § 48.90(1)(a) to read, as material to this appeal:

> A petition for adoption may be filed at any time if:
>
> (a) One of the petitioners is a relative of the child by blood *or by adoption.*

1997 Wis. Act 104, § 15m. The majority also notes that a respected treatise on statutory construction recognizes that if

162 Wis. 2d 883, 907, 470 N.W.2d 900, 910 (1991) (courts construe statutes, not rewrite them "by judicial fiat"). I respectfully dissent and would affirm.

an amendment to a statute is enacted "soon after controversies" as to how the statute should be interpreted, "it is logical to regard the amendment as a legislative interpretation of the original act." 1A NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 22.31 at 279 (5th ed. 1992). Significantly, the legislature *added* the words "or by adoption" rather than clarifying, as the majority contends, that the words "by blood" encompassed "by adoption" all along. I take this to mean that the legislature recognized that "by blood" meant what the words denote and nothing more.